DSAM GLOBAL VALUE FUND; Putnam Tank Car Employee Profit Sharing Plan; Establishment Comfort; Rolando Chavez; Hank Elkins, Plaintiffs–Appellants,

v.

ALTRIS SOFTWARE, INC., Defendant,

and

PricewaterhouseCoopers LLP, Defendant–Appellee.

No. 00–56848.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2002.

Filed April 19, 2002.

387

Maureen E. Mahoney, Latham & Watkins, Washington, DC, and Miles N. Ruthberg, Latham & Watkins, Los Angeles, CA, for the defendant/appellee.

Before O'SCANNLAIN and SILVERMAN, Circuit Judges, and REED,* District Judge.

OPINION

SILVERMAN, Circuit Judge.

The issue in this case is whether the allegations of a seriously botched audit are sufficient to plead scienter under the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999). It is alleged that the auditor egregiously failed to see the obvious—that according to Generally Accepted Accounting Principles ("GAAP"), millions of dollars in revenue from software sales reflected in a financial statement should not have been recognized. We hold that the complaint sets out a compelling case of negligence—perhaps even gross negligence—but does not give rise to a strong inference that the auditor acted with an intent to defraud, conscious misconduct, or deliberate recklessness, as is required in a securities fraud case. We affirm the district court's dismissal of the plaintiffs' complaint.

I.

Appellants were shareholders of Altris Software, Inc. a publicly-traded company

Eric A. Isaacson, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, CA, for the plaintiffs/appellants.

* The Honorable Edward C. Reed, Senior United States District Judge for the District of Nevada, sitting by designation.

that develops document management software. Appellants brought this securities fraud lawsuit against Pricewaterhouse-Coopers, LLP, the certified public accounting firm hired by Altris to audit its 1996 financial statement. In February, 1997, Pricewaterhouse certified that Altris's 1996 financial statement complied with GAAP and that Pricewaterhouse had conducted its audit in accordance with Generally Accepted Auditing Standards. Altris filed its Form 10–K with the Securities and Exchange Commission for 1996 and included the Pricewaterhouse audit opinion. The financial statement reflected net income of approximately $2.4 million for the year.

About a year later, in the course of preparing for the 1997 audit, Pricewaterhouse discovered that the 1996 Altris financial statement reflected revenue that should not have been recognized, and it withdrew the audit opinion. Altris then publicly announced that it had overstated its revenues, earnings and receivables for all of 1996 and the first three quarters of 1997 and trading in Altris stock was halted. Shortly thereafter, Altris formally restated its 1996 revenue, reversing $4.9 million in previously recognized revenue. This caused the financial statement to change from showing a $2.4 million in net income to showing a $2.5 million loss.

Investors filed six related securities fraud class actions in district court against Altris and its officers and directors. After the district court consolidated the actions, investors added Pricewaterhouse as a defendant. The district court dismissed the first consolidated complaint with leave to amend, ruling that Appellants had failed to plead scienter properly. Appellants filed a second amended complaint. The district court dismissed the second amended complaint for the same reason but this time without leave to further amend. The district court reasoned that the amended complaint failed to sufficiently allege scienter—that Pricewaterhouse had actual knowledge that its audit opinion was inaccurate at the time it was issued or that Pricewaterhouse was deliberately reckless with respect to its accuracy. The district court ruled that further amendment of the complaint would be futile.

## II.

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's Rule 12(b)(6) dismissal of the second amended complaint de novo and examine the securities fraud complaint to determine whether Appellants have complied with the stringent pleading required by the PSLRA. *Desaigoudar v. Meyercord,* 223 F.3d 1020, 1021 (9th Cir.2000), *cert. denied,* 532 U.S. 1021, 121 S.Ct. 1962, 149 L.Ed.2d 757 (2001); *Silicon Graphics,* 183 F.3d at 983.

## III.

### A.

■ To state a claim under Section 10(b), 15 U.S.C. 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b5, Appellants must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which Appellants relied (5) which proximately caused their injury. *McCormick v. Fund American Cos.,* 26 F.3d 869, 875 (9th Cir.1994). Only scienter is at issue in this case. Appellants argue that they sufficiently pleaded scienter under the PSLRA and *Silicon Graphics.* The PSLRA requires Appellants to "state with particularity facts giving rise to a strong inference that [Pricewaterhouse] acted with [scienter]." 15 U.S.C. § 78u–4(b)(2) (2002). Appellants must "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious

misconduct." *Silicon Graphics,* 183 F.3d at 974. Recklessness is:

> a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir.1990) (quotations omitted). To allege a "strong inference of deliberate recklessness," Appellants "must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity." *Silicon Graphics,* 183 F.3d at 974.

**B.**

■ The essence of Appellants' claim is that Altris recognized revenue on software sales before critical requirements had been met, making its 1996 sales and earnings appear larger than they really were, and that Pricewaterhouse failed to take the necessary steps to test those sales to provide a reasonable basis for the audit opinion it issued. For example, to demonstrate that Pricewaterhouse deliberately ignored the falsity of Altris's financial statement, Appellants point to transactions between Altris and two of its "value added resellers." A value added reseller ("VAR") is a middleman that buys product for subsequent resale. It does not pay its supplier until it has been paid by its customer. On the last day of 1996, Altris recorded revenue of $250,000 from Plexxus and $338,220 from Staffware, two of its VARs, as "start-up fees." These VAR transactions eventually required reversal and restatement. Appellants allege that Pricewaterhouse audited these transactions, yet failed to see three "red flags" that should have alerted Pricewaterhouse that the recognition of revenue from these VARs transaction was highly suspicious. The first red flag was that the start-up fees were grossly exorbitant; Altris never previously had start-up fees of more than $5,000. The second was that Altris recorded both transactions on the last day of the year. The third was that the contract documents described the transaction as "special."

Appellants also identified twelve large transactions, audited by Pricewaterhouse, where Altris improperly recognized revenue from software sales. In this connection, Appellants allege that in auditing the Altris financial statement, Pricewaterhouse deliberately ignored Altris's repeated failure to follow a Generally Accepted Accounting Principle, namely, Software Revenue Recognition Statement of Position 91–1 ("SOP 91–1"). Under SOP 91–1, a company should not recognize revenue from software sales when there is significant uncertainty as to whether the company will ever get paid. Under this rule, software revenue should be recognized only when the following conditions exist: First, there must be "persuasive evidence" of an agreement for the sale of the merchandise. Second, there must be an irrevocable, non-contingent obligation to pay a fixed fee, normally payable within 12 months. Third, delivery of the software must have occurred. Fourth, no significant vendor obligations remain. Fifth, collection must be probable. Sixth, revenue should not be recognized if there is a right of return, unless it is routine and relatively minor. Seventh, if acceptance of the software has not yet occurred, lack of acceptance may preclude revenue recognition if there is significant uncertainty about the customer's acceptance of the software.

As to these twelve large transactions, which passed Pricewaterhouse's audit, Ap-

pellants point to instances in which Altris recognized revenue from software sales where (1) there was no signed, fixed agreement, (2) the amount of the software license fee was not fixed, or the contract did not require payment within 12 months, (3) customers and resellers had unexpired cancellation privileges, and (4) Altris still had significant obligations to perform. Appellants allege that in performing its audit, Pricewaterhouse had in its hands the very documentation that clearly showed Altris' violation of GAAP, and in particular, SOP 91–1, yet did not see the obvious. Appellants allege that Pricewaterhouse conducted the equivalent of no audit at all. *In re Software Toolworks Inc.*, 50 F.3d 615, 628 (9th Cir.1994).

Pricewaterhouse now concedes that the Altris financial statement it audited did not comply with Generally Accepted Accounting Principles. However, Pricewaterhouse argues that the facts as pleaded at best show negligence, not the strong inference of scienter required to plead a case of fraud under the securities laws. We agree with the district judge that Appellants' allegations do not establish a strong circumstantial case of deliberate recklessness or conscious misconduct as required by *Silicon Graphics*.

■ ■ The factual allegations in this case are similar to the allegations we rejected in *Software Toolworks*. The plaintiffs in *Software Toolworks* alleged that sales agreements were "poorly documented, informal and conditional," the transactions were risky, management was under pressure for favorable earnings and the accountants obtained only oral confirmations of some agreements. *Software Toolworks*, 50 F.3d at 627. We found that such allegations that an accountant failed to investigate established only a negligent audit rather than scienter:

The proof of scienter in fraud cases is often a matter of inference from circum-
stantial evidence. However, the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. Rather, scienter requires more than a misapplication of accounting principles. The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

*Software Toolworks*, 50 F.3d at 627–28 (internal alternations, quotations and citations omitted). Thus, mere allegations that an accountant negligently failed to closely review files or follow GAAP cannot raise a strong inference of scienter. *Id.* at 628.

Appellants argue that Pricewaterhouse must have consciously disregarded the improper revenue recognition because it had access to the documents that revealed Altris' improper revenue recognition at the very time it conducted the original audit. That fact does not strongly compel an inference of intentional or deliberately reckless conduct as opposed to ordinary carelessness. We rejected a similar claim in *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426–27 (9th Cir.1994). In that case, the plaintiffs' expert concluded that the accountant had improperly recognized revenue in violation of GAAP and the failure was "so obvious that ... [the accounting firm] must have been aware of it." *Worlds of Wonder*, 35 F.3d at 1425. We rejected this testimony as evidence of scienter because it was a conclusory opinion "not based on specific facts that shed light on the mental state of [the accountant's] auditors." *Id.* at 1426. Like the plaintiffs in *Worlds of Wonder*, Appellants have failed to allege any facts to establish

that Pricewaterhouse knew or must have been aware of the improper revenue recognition, intentionally or knowingly falsified the financial statements, or that the audit was "such 'an extreme departure' from reasonable accounting practice that [Pricewaterhouse] 'knew or had to have known' that its conclusions would mislead investors." *Id.* (quoting *Hollinger*, 914 F.2d at 1569). Appellants' allegations of negligence are insufficient to establish a strong inference of deliberate recklessness under *Silicon Graphics*. The district court properly dismissed the complaint.

## C.

■ Alternatively, Appellants argue that in dismissing the complaint, the district court should have granted leave to file yet another amended complaint. We agree with the district court that another amendment would be futile. *Desaigoudar*, 223 F.3d at 1026; *Silicon Graphics*, 183 F.3d at 991. Appellants conducted extensive factual investigation, have all of the necessary documents, and have failed to come forward with additional facts that would meet the scienter pleading requirement.

## IV.

■ In summary, the facts stated in the second amended complaint fail to give rise to a strong inference that Pricewaterhouse had actual knowledge that the Altris financial statement it audited was inaccurate, or that Pricewaterhouse was deliberately reckless. Negligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud under the PSLRA and *Silicon Graphics*.

AFFIRMED.