**FERRIS, BAKER WATTS, INC., Plaintiff,**

v.

**ERNST & YOUNG, LLP Defendant.**

**No. Civ.03–3339 (RHK/AJB).**

United States District Court, D. Minnesota.

Nov. 24, 2003.

Richard A. Kirby, Dan Marino, and Jessie K. Minier, Preston, Gates, Ellis & Rouvelas Meeds, Washington D.C.; Terence M. Fruth, Thomas E. Jamison, and K. Jon Breyer, Fruth, Jamison & Elsass, P.A., Minneapolis, Minnesota, for Plaintiff.

Miles N. Ruthberg and Ethan J. Brown, Latham & Watkins LLP, Los Angeles, California; Lewis A. Remele, Jr. and Christopher R. Morris, Bassford Remele, Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

■ This matter comes before the Court on Defendant's Motion to Dismiss. Plaintiff Ferris, Baker Watts, Inc. ("FWB") alleges that Defendant Ernst & Young, LLP's ("E & Y") audit of MJK Clearing, Inc. ("MJK"), a now-bankrupt securities broker-dealer, violated federal and state securities laws and constituted fraud and professional malpractice under Minnesota common law. E & Y has moved to dismiss the Complaint against it on the grounds that FBW has failed to plead reliance and scienter, and is not among the limited class with standing to sue for professional malpractice. For the reasons set forth below, the Court will grant E & Y's motion with regard to the federal claim, and decline to exercise supplemental jurisdiction over the remaining state law claims.[1]

### Background [2]

As this Court has laid out before in great detail, MJK was a Minneapolis-based

---

1. E & Y has requested that the Court take judicial notice of a complaint filed by another party in a related case and has cited to a paragraph from that complaint in its reply papers. FBW has opposed that request and filed a motion to strike. Because it would be inappropriate to take judicial notice of a disputed document for the truth of the matter asserted, the Court will deny E & Y's request and grant FBW's motion to strike.

2. For purposes of this motion, the Court will accept the allegations in the Complaint as true.

broker dealer engaged in securities-lending transactions. (*See generally* Compl. ¶ 1); *Stephenson v. Deutsche Bank AG,* 282 F.Supp.2d 1032, 1042 (D.Minn.2003); *Ferris, Baker Watts, Inc. v. Stephenson,* 2003 WL 1824937 (D.Minn. April 7, 2003). A typical securities-lending transaction involves one party, usually a broker-dealer, loaning securities to another party, usually another broker-dealer, in exchange for cash collateral that slightly exceeds the value of the securities. (Compl.¶ 20.) This cash collateral is "marked to the market" so that, as the price for a particular stock rises and falls, cash is delivered to or returned from the lender. (*Id.* ¶ 24.) As the result of the manipulation of the price of several thinly traded securities (by parties sued in related litigation) in these securities-lending transactions, MJK collapsed in the largest bankruptcy of a U.S. broker dealer in at least 30 years. *Stephenson,* 282 F.Supp.2d at 1041.

Upon the collapse of MJK, FBW was unable to reclaim $20 million dollars of cash collateral it had sent to MJK in exchange for these manipulated–and essentially worthless–securities. (*See generally* Compl. ¶ 1.) FBW entered into these transactions with MJK only after FBW reviewed E & Y's audit of MJK's financial statements. (*Id.*) Among the representations FBW relied upon was E & Y's statement that it had reviewed the financial statements in accordance with customary audit procedures. (*Id.*)

## Standard of Decision

"Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo.,* 244 F.3d 623, 627 (8th Cir.2001). A cause of action "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir.2002) (internal citations omitted) (citing *Kohl v. Casson,* 5 F.3d 1141, 1148 (8th Cir.1993)). In analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those allegations. *See Turner v. Holbrook,* 278 F.3d 754, 757 (8th Cir.2002).

## Analysis

FBW has asserted five counts against E & Y: (1) Section 10(b) of the Exchange Act of 1934 and Rule 10b–5 promulgated thereunder; (2) Section 80A.01 of the Minnesota Securities Act; (3) common law fraudulent misrepresentation; (4) common law negligent misrepresentation; and (5) professional malpractice. E & Y has moved to dismiss each of the claims against it. The Court will begin its analysis with the sole federal claim.

## I. Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b–5

The Complaint alleges that E & Y's audit of MJK violated Section 10(b) of the 1934 Act ("Section 10(b)"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b–5, 17 C.F.R. § 240.10b–5. Under Section 10(b), it is unlawful for any person, "directly or indirectly ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe...." 15 U.S.C. § 78j(b). Section 10(b) is not limited to a purchaser or seller of securities, but rather "reaches any deceptive device used 'in connection with the purchase or sale of any security.'" *Id.* (quoting 15 U.S.C. § 78j(b)).

Rule 10b–5, adopted by the SEC pursuant to its rulemaking authority, states that "[i]t shall be unlawful for any person, directly or indirectly":

    (a) To employ any device, scheme or artifice to defraud,

    (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. Rule 10b–5 is coextensive in scope with Section 10(b). *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

While allegations of fraud are generally subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, certain aspects of Section 10(b) and Rule 10b–5 fall under special pleading standards of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)(2) ("the Reform Act"). Under the Reform Act, a complaint based on statements or omissions under Rule 10b–5(b) must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u–4(b)(1). Moreover, the Reform Act also requires that complaints alleging Section 10(b) and Rule 10b–5(b) violations "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" respecting "each act or omission alleged to violate" these rules. 15 U.S.C. § 78u–4(b)(2) (emphasis added). Finally, it is the plaintiff's burden to "prov[e] that the act or omission of the defendant alleged to violate [Section 10(b) or Rule 10b–5] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u–4(b)(4).

■ FBW asserts that E & Y violated each of Rule 10b–5's three subsections by "employ[ing] devices, schemes, and artifices to defraud," making material false statements and omissions, and "engag[ing] in acts, practices or courses of business that operated . . . as a fraud and deceit upon FBW." (Compl.¶ 175(a)-(c).) E & Y argues that FBW's Rule 10b–5 claims are defective because FBW (1) has not created the strong inference of scienter required under the Reform Act, and (2) has not pleaded reliance with particularity. Because the Court finds that the Complaint does not give rise to a strong inference of scienter, it need not reach the question of whether FBW has adequately pleaded reliance.

Under the Reform Act, a complaint alleging violations of Section 10(b) and Rule 10b–5(b) must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" respecting "each act or omission alleged to violate" these rules. 15 U.S.C. § 78u–4(b)(2) (emphasis added). The Court must therefore view the Complaint "to determine whether [it] set[s] forth facts that give a *strong* reason to believe that there was a reckless or intentional wrongdoing." *In re Navarre Corp.*, 299 F.3d 735, 745 (8th Cir.2002) (emphasis added).

■ FBW alleges that E & Y's audit of MJK constitutes a reckless violation of Rule 10b–5. While allegations of negligent conduct are insufficient to establish a viola-

tion of Rule 10b–5, *Ernst & Ernst*, 425 U.S. at 215, 96 S.Ct. 1375, conduct which rises to the level of severe recklessness may meet the scienter requirement, *K & S Partnership v. Continental Bank, N.A.*, 952 F.2d 971, 978 (8th Cir.1991). Conduct qualifying as "severe recklessness" includes only

> those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 654 (8th Cir. 2001) (internal quotation omitted).

The Complaint asserts that E & Y violated various accounting and auditing principles. (*See* Compl. ¶¶ 39, 41, 42, 56–69, 109–111, 169.) For instance, FWB alleges that

(a) E & Y misrepresented in its 2001 audit opinion that its audit of MJK was conducted in accordance with GAAS both in its inadequate audit planning and in its lack of adequate substantive testing;

(b) E & Y misleadingly failed to disclose, in its separate audit opinion provided pursuant to SEC Rule 17a–5, that MJK had material inadequacies in its internal controls;

(c) E & Y misrepresented in its 2001 audit opinion that MJK's financial statements were stated in accordance with GAAP where MJK failed to disclose the material concentration of its business involving Native Nations and the attendant risks associated with that concentration;

(d) E & Y misrepresented in its 2001 audit opinion that MJK's financial statements were stated in accor-dance with GAAP where MJK failed to disclose the material risks of un-collectability of the Native Nations account receivable or write-down the securities borrowed account receiv-able from Native Nations to the ex-tent that it was probably uncollect-ible;

(e) E & Y misrepresented in its 2001 audit opinion that it had conducted its audit in accordance with GAAS and SEC rules with respect to MJK's net capital computation in spite of the facts that (i) MJK's pro-cedures for calculating net capital were materially flawed, based on materially flawed financial state-ments, and (ii) MJK's calculated net capital was materially overstated; and

(f) E & Y misleadingly failed to disclose in its 2001 audit opinion that the collectability issues surrounding MJK's account receivable from Na-tive Nations presented a growing concern for the company.

(Compl.¶ 169(a)-(f).) FBW asserts that these and other allegations indicate "such pervasive indifference to GAAP and GAAS requirements, and such egregious viola-tions, that they cumulatively amount to circumstantial evidence establishing a strong inference of scienter." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 23.)

FBW is wrong. As the Eighth Circuit has stated, "Allegations of GAAP viola-tions are insufficient, standing alone, to raise an inference of scienter. Only where these allegations are *coupled with evidence of corresponding fraudulent intent* [or recklessness] might they be sufficient." *In re Navarre*, 299 F.3d at 745 (emphasis added); While FBW cites authority–all outside of the Eighth Circuit–for the prop-osition that particularly egregious or wide-spread GAAP and GAAS violations might

be sufficient to generate an inference of scienter, the Eighth Circuit has held squarely to the contrary. *See In re K–tel Int'l, Inc. Sec. Litig.,* 300 F.3d 881, 895, 900 (8th Cir.2002) (affirming dismissal of claims premised on "sheer magnitude of GAAP violations"); *In re Navarre,* 299 F.3d at 740 (affirming dismissal of claim alleging "many" violations of GAAP); *see also DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 387 (9th Cir. 2002) (holding that allegations of "a seriously botched audit" where auditor "egregiously failed to see the obvious" do not give rise to "a strong inference that the auditor acted with ... deliberate recklessness").

The reason for this rule is clear. GAAP are "far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions. [GAAP], rather, tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *K–Tel,* 300 F.3d at 890 (quoting *Thor Power Tool Co. v. C.I.R.,* 439 U.S. 522, 544, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979)). To allow a strong inference of scienter on the basis of GAAP and GAAS violations alone would–almost by definition–"countenance pleading fraud by hindsight." *Green Tree Fin.,* 270 F.3d at 662. This the Court cannot do. Accordingly, having failed to find the strong inference of scienter required by the Reform Act, the Court will grant E & Y's Motion to Dismiss.

## II.   Continued Exercise of Supplemental Jurisdiction

■   While both parties clearly prefer to remain in federal court, the Court concludes that its continued exercise of supplemental jurisdiction would be inappropriate. When a district court dismisses the claims over which it has original jurisdiction, it may decline to continue to exercise

supplemental jurisdiction over the state law claims that are related to those federal claims. *See* 28 U.S.C. § 1367(c)(3). Among the reasons a Court may decline the continued exercise of supplemental jurisdiction is where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c).

While the remaining claims may not be entirely novel, they nonetheless intrude into unsettled areas of Minnesota law. Rather than try to navigate the sometimes conflicting authority cited by the parties, the Court concludes that it is better to allow the Minnesota courts to resolve these questions. *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1098–99 (8th Cir.1999) ("[W]hen state and federal claims are joined and all federal claims are dismissed ... the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law...."). Therefore, as a matter of comity, the Court will dismiss FBW's state law claims without prejudice.

### Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1.   Plaintiff's Motion to Strike (Doc. No. 16) is **GRANTED**;

2.   Defendant's Amended Motion to Dismiss (Doc. No. 10) is **GRANTED IN PART**. Count I is **DISMISSED WITH PREJUDICE**; and

3.   Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Counts II through V are hereby **DISMISSED WITHOUT PREJUDICE**.[3]

---

**3.**   *See generally* 28 U.S.C. § 1367(d).

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**