JORDAN, Circuit Judge,
Dissenting.
Because I believe the District Court properly determined that the Wiests failed to establish that Mr. Wiest held or communicated an objectively reasonable belief that the actions of Tyco officials constituted a violation of one or more of the laws referenced in § 806 of the Sarbanes-Oxley Act of 2002 (“SOX”), Pub. L. No. 107-204, 116 Stat. 745 (codified at 18 U.S.C. § 1514A), I respectfully dissent.
Whistleblower statutes like SOX § 806 seek to protect people who have the courage to stand against institutional pressures and say plainly, “what you are doing here is wrong” — not wrong in some abstract or philosophical way, but wrong in the particular way identified in the statute at issue. See Day v. Staples, Die., 555 F.3d 42, 55 (1st Cir.2009) (requiring that an employee’s Section 806 complaint “be measured against the basic elements of the laws specified in the statute”). The protection of § 806 depends upon the whistleblower identifying wrongdoing made illegal by federal laws targeting fraud, especially fraud against the holders of publicly traded securities. To qualify as a whistleblower under § 806, the employee must have provided information regarding conduct “which the employee reasonably believes constitutes a violation of [18 U.S.C. §§ ] 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.... ” 18 U.S.C. § 1514A(a)(1). Section 806 thus defines protected conduct not by reference to the statute in which it is contained,[1] but by reference to four federal fraud statutes, SEC rules and regulations, and other fed *139 eral law that is circumscribed as “relating to fraud against shareholders.”
As the Majority notes, the elements of a § 806 retaliation claim are that (1) the employee “engaged in a protected activity,” (2) the employer “knew or suspected that the employee engaged in the protected activity,” (3) the employee “suffered an adverse action,” and (4) the circumstances were “sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.” 29 C.F.R. § 1980.104(e)(2); see also Day, 555 F.3d at 53 (noting that the “requirements for a prima facie [§ 806] case are articulated in the DOL regulations” (citing 29 C.F.R. § 1980.104)). For purposes of the first, second, and fourth elements, the term “protected activity” means “to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes -a violation of’ one of the laws referenced in § 806. 11 U.S.C. § 1514A(a)(11). To establish a reasonable belief that such a violation has taken place, “an employee must show that he had both a subjective belief and an objectively reasonable belief that the conduct he complained of constituted a violation of relevant law.” Welch v. Chao, 536 F.3d 269, 275 (4th Cir.2008) (internal quotation marks omitted). Thus, general allegations of misconduct by corporate officers, even if that misconduct relates to financial matters, are not sufficient to state a § 806 claim. See Day, 555 F.3d at 56-57 (noting that “violations of ‘general accounting principles’ ” do not constitute “shareholder fraud” that gives rise to SOX-protected activity).
The second element of a SOX retaliation claim confirms that conclusion. It is difficult to see how a defendant, such as a whistleblower’s supervisor, can know or suspect that the whistleblower-plaintiff is engaged in protected conduct if the plaintiffs intra-corporate communications do not relate in an understandable way to one of the stated provisions of federal law. What matters is not what is locked inside the plaintiffs mind or how the plaintiff may later describe his actions; it is what is communicated to the employer that counts. See Welch, 536 F.3d at 277 (“[T]he relevant inquiry is what an employee actually communicated to [his] employer prior to the ... termination; it is not what [is] alleged in [the employee’s] OSHA complaint.” (alterations in original) (internal quotation marks omitted)). Both the Department of Labor’s Administrative Review Board (“ARB”) and the Majority effectively bypass that element of a SOX retaliation claim and concentrate their focus on the complainant’s frame of mind and after-the-fact spin. In doing so, they ignore the need for a whistleblower’s employer to actually perceive that a whistle has been blown.[2]
The imperative that the whistleblower sound off with clarity was the subject of the ARB’s opinion in Platone v. FLYi, Inc., 25 IER Cases 278 (Sept. 29, 2006). That opinion, the reasoning of which was adopted by several courts of appeals,[3] re *140 quired that “the [complaining] employee’s communications must ‘definitively and specifically’ relate to any of the listed categories of fraud or securities violations under [§ 806].” 25 IER Cases at 287. In essence, the ARB established something like a pleading standard for intra-corporate communications. But Platone has been supplanted by the ARB’s recent opinion in Sylvester v. Parexel International LLC, 32 IER Cases 497, 505 (U.S. Dep’t of Labor May 25, 2011) (en banc), which jettisons the requirement that SOX whistleblowers definitively and specifically tie with their disclosures to the kinds of fraud listed in § 806.
The ARB evidently viewed that standard as too stringent. When confronted in Sylvester with complainants who alleged that their intra-corporate communications concerning compliance with FDA testing protocols were actually allegations of securities fraud,[4] the ARB in effect said “good enough.” More precisely, it said:
[b]ecause a complainant need not prove a violation of the substantive laws, ... a [SOX] complainant can have an objectively reasonable belief of a violation of the laws in Section 806 ... even if the complainant fails to allege, prove, or approximate specific elements of fraud, which would be required under a fraud claim against the defrauder directly. In other words, a complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.
Sylvester, 32 IER Cases at 512 (emphasis added). Ponder that: without “alleging]” or “provfing]” or even “approximating]” a charge of fraud, the complaints of a so-called whistleblower are, in the ARB’s view, supposed to put a company on notice that a fraud has been identified. The rationale the ARB offered for that conclusion was the ipse dixit that “the purposes of the whistleblower protection provision will be thwarted,” id. at 512, if a § 806 complainant proceeding on a theory of underlying shareholder fraud must actually say something pointing out such fraud.
To discredit the “definitive and specific” requirement, the ARB said that the requirement had been erroneously drawn from a different statute. The whistleblow-ing provision in the Energy Reorganization Act (“ERA”), 42 U.S.C. § 5851, protects an employee who participates in any “proceeding or in any other action to carry out the purposes” of that statute. 42 U.S.C. § 5851(a)(1)(F). The ARB reasoned that the “importation” of a pleading *141 standard derived from the ERA’s catch-all provision “is inapposite to the question of what constitutes protected activity under SOX’s whistleblower protection provision” because “the SOX whistleblower protection provision contains no similar language, and instead expressly identifies the several laws to which it applies.” 32 IER Cases at 509.
My colleagues in the Majority conclude that “the ARB’s rejection of Platone’s ‘definitive and specific’ standard is entitled to Chevron deference” (Majority Op. at 131) because “the ARB thoroughly explained why it reversed the course it previously set in Platone” (id. at 131). With all due respect, I cannot agree with that generous characterization of the ARB’s work product. Sylvester’s rejection of Platone is hardly explained and far from persuasive.[5] It is strange, for example, to hear the ARB claim that the greater specificity of § 806 makes the “definitive and specific” standard inappropriate but then hear it say in the next breath that one need not bother with alleging, proving, or even approximating a statement showing that the specifics of § 806 have been satisfied.
Moreover, the reasoning behind the “definitive and specific” standard applies with at least equal force to § 806 as it does to the pertinent provision of the ERA. I agree with the ARB at least to the extent that it observed that courts have construed the ERA catch-all provision “in light of [that statute’s] overarching purpose of protecting acts implicating nuclear safety,” and thus courts have required “that, an employee’s actions implicate safety ‘definitively and specifically’ ” to constitute protected activity. Sylvester, 32 IER Cases at 509. In the same way, the overarching purpose of SOX is to expose and therefore deter fraud against shareholders of companies whose shares are publicly traded, see Cohen v. Viray, 622 F.3d 188, 195 (2d Cir.2010) (noting that “[SOX] ... outlaws fraud and deception by managers in the auditing process” (quoting S.Rep. No. 107-205, at 23 (2002) (internal quotation marks omitted))), and, just as the ERA cases call for a definitive and specific linkage to that statute’s purpose, so a SOX whistleblower was, once upon a time, required to demonstrate “definitively and specifically” that the subject of his allegedly protected communication implicated the kind of unlawful activity targeted by SOX.[6]
*142 At the end of the day, though, the fate of the “definitive and specific” standard is not the main issue. That standard is just one way of practically addressing the requirement that a SOX whistleblower demonstrate a reasonable belief that the kinds of unlawful behavior identified in § 806 have occurred or are threatened. Of particular importance here is the “objective reasonableness” component of the reasonable belief requirement. The ARB reaffirmed that component in Sylvester, noting that “[t]he second element of the ‘reasonable belief standard, the objective component, ‘is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.’” 32 IER Cases at 507 (quoting Harp v. Charter Commc’ns Inc., 558 F.3d 722, 723 (7th Cir.2009)).[7] Unfortunately, Sylvester provides no guidance as to what, if anything, a § 806 claimant is required to allege. In its efforts to lower the bar, the ARB has provided little more than a recitation of what is not required for an employee to allege protected conduct. See 32 IER Cases at 512 (“[A] complainant need not prove a violation of the substantive laws ... ”); id. (“[A] complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.”); id. (“[A] complainant ... [need not] allege, prove, or approximate that the reported irregularity or misstatement satisfies securities law ‘materiality’ standards, was done intentionally, was relied upon by shareholders, and that shareholders suffered a loss because of the irregularity.”).[8]
Trying to apply the impossibly vague “standard” of Sylvester, the Majority has adopted an internally inconsistent test. On one hand, my colleagues rightly reject the argument offered by our amicus, the National Whistleblower Center, that no more than an employee’s own subjective good faith belief is required to allege a § 806 violation. (See Majority Op. at 132 (“As explained in Sylvester, the reasonable belief standard also includes an objective element.”).) On the other hand, they go on to conclude that the ARB “expressly rejected” the District Court’s interpretation of § 806 as requiring that Wiest demonstrate “ ‘an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors which were material and which risked loss.’ ” (Majority Op. at 133 (quoting Wiest *143 v. Lynch, No. 10-3288, 2011 WL 2923860, at *4 (E.D.Pa. July 21, 2011)).) Those two conclusions seem to me to be in tension, and one is left to wonder what the objective standard is for measuring whether a complainant’s belief is reasonable if it is not the existing rules of law expressly noted in § 806.[9]
Pre-Sylvester case law from federal courts made it clear that “[t]he reasonableness of [a SOX complainant’s] belief for purposes of § [806] must be measured against the basic elements of the laws specified in the statute.” Day, 555 F.3d at 55. Logically, that ought still to be the case. Section 806 references identifiable pieces of positive law. They are not mere generalities and they do not open the door to whistleblower relief to anyone with vague feelings of unease or even specific discomfort with something other than that which is identified in § 806. Particularly pertinent here, “ ‘[flraud’ itself has defined legal meanings and is not, in the context of SOX, a colloquial term.” Id.[10] Section 806 thus requires a SOX whistleblower to demonstrate that he has done more than criticize undesirable corporate conduct. He is required to demonstrate that his protected communication concerned a “violation” of one of the listed statutes or of an SEC rule or regulation or other Federal law relating to fraud on shareholders. A violation can only be said to “relat[e] to ... fraud against shareholders” if it manifests at least some of the elements of fraud as defined in the securities context, such as falsity, scienter, and materiality. Cf. In re Cabletron Sys., Inc., 311 F.3d 11, 34 (1st Cir.2002) (“Merely stating in conclusory fashion that a company’s books are out of compliance with GAAP would not in itself demonstrate liability under section 10(b) or Rule 10b-5.”); DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385, 390 (9th Cir.2002) (“[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter” in a securities fraud *144 action (internal quotation marks omitted)); Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir.2000) (“[Allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of ‘corresponding fraudulent intent,’ might they be sufficient.” (internal quotation marks omitted)). The many cases to that effect cannot with propriety be swept away by the federal bureaucracy deciding it would like SOX to reach beyond the frauds specified in the statute.[11]
In this case, the application of a test of objective reasonableness that looks to the elements of securities fraud shows Wiest’s allegedly protected communications for what they are: a bookkeeper’s sensible inquiries about proper accounting for expenses, not allegations of fraud. Wiest’s statements about the Atlantis Resort Event prove the point. The Majority concludes that “[a] reasonable person in Wiest’s position who had seen the expense request for the extravagant Atlantis event could have believed that treating the Atlantis event as a business expense may have violated a provision of Section 806.... ” (Majority Op. at 28.) A fair question is “which one?” Wiest does not claim that he reasonably believed that “extravagance” or the possible reporting of employee expenses as advertising expenses constituted mail fraud, wire fraud, or bank fraud. He alleges rather that, “if Tyco had processed the transaction as originally submitted, it ‘would have resulted in a misstatement of accounting records and a fraudulent tax deduction.’ ” (Majority Op. at 135 (quoting App. at 43).) That would seem to point to a violation of 18 U.S.C. § 1348, which involves fraud in connection with a sale of securities, or of a “rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.” 18 U.S.C. § 1514A(a)(1). However, Wiest’s communication with Tyco about the Atlantis Event contains none of the elements of a securities fraud. In particular, it contains no hint of falsity but rather suggests that an accounting judgment was faulty and needed to be corrected, which it was.[12]
*145 The supposed connection between Wi-est’s communications regarding the Wintergreen Resort Event and a violation of a statute or regulation referenced in § 806 is even more strained. The Majority concludes that “a reasonable person in Wiest’s position could have believed that the event’s approval by an attendee of the event[ ] ... instead of by the CEO as required by internal control procedures, may have violated one of the provisions contained in Section 806.” (Majority Op. at 136.) Assuming the unspecified violation is again securities fraud, there is still the glaring question of how his communication with the company indicated any fraud. Unlike his allegations concerning the Atlantis Resort Event, Wiest does not claim that expenses from that event were not recorded correctly, nor does he allege that any public financial disclosure was at issue. As a result, it is impossible to identify a securities fraud. The Majority simply suggests that it was reasonable for Wiest to believe that there had been such a violation because “the event’s approval [was] by an attendee of the event, who would therefore directly benefit from that approval....” (Id.) Leaving aside the fact that there is no explanation of what the “direct benefit” was, that allegation goes only to motivation and does nothing to establish a violation of any of the laws referenced in § 806.
Given the present record, two final observations should be made about the Majority’s application of the objective reasonableness standard. First, even Sylvester acknowledged that objective reasonableness “is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.” 32 IER Cases at 507 (quoting Harp, 558 F.3d at 723) (internal quotation marks omitted). When an employee is a licensed CPA, and thus able to distinguish between violations of accounting rules and violations of SEC rules or regulations, a failure to do so tends to show his asserted belief that a violation of the latter has occurred to be less than objectively reasonable. Cf. Allen, 514 F.3d at 477 (finding that, although a violation of an SEC accounting bulletin could fall within the general “fraud against shareholder” category of § 1514A, the complainant CPA’s belief as to the violation was not objectively reasonable). Wiest is a trained accountant who had more than thirty years experience in Tyco’s accounting department, which, as the Majority points out, had been under “a high level of audit scrutiny” for *146 the last decade. (Majority Op. at 124. (quoting App. at 42) (internal quotation marks omitted).) The Majority itself observes that Wiest had knowledge of both “accounting standards ... and securities and tax laws.” (Id.) Therefore, Wiest should be held to a “higher [objective reasonableness] standard” than someone of “limited education.” Sylvester, 32 IER Cases at 507 (citing Parexel Int’l Corp. v. Feliciano, 28 IER Cases 820, 2008 WL 5101642, at *3 & n. 6 (E.D.Pa.2008)). Since his allegedly protected communications do not meet even an objective standard geared to the general public, they certainly do not meet a heightened standard applicable to someone of his training and experience.
Second, as the ARB acknowledged in Sylvester, “many of the laws listed in § [806] of SOX contain materiality requirements,” and “[i]t may well be that a complainant’s complaint concerns such a trivial matter that he or she did not engage in protected activity under Section 806.” 32 IER Cases at 512. For that grudging acknowledgement of a materiality requirement to be consistent with existing law concerning fraud against shareholders, a SOX complainant must believe that there is “a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available.” Basic, Inc. v. Levinson, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) (internal quotation marks omitted)); see also TSC Indus., 426 U.S. at 448, 96 S.Ct. 2126 (acknowledging that certain information concerning corporate developments is of “dubious significance”). Wiest’s allegedly protected communications concerned transactions with no financial impact on Tyco, see supra note 12, or internal control practices that are not financial in nature and are not reported to shareholders. The subjects of Wiest’s communications were not material, and contrary to the Majority’s conclusion, those communications do not demonstrate an objectively reasonable belief that a shareholder fraud was being threatened.
The essence of Wiest’s assertion that the conduct he found objectionable “relates to” fraud against shareholders for purposes of § 806 is, as his attorney put it to the District Court, that “every time you improperly allocate money to something that is improper, you are affecting the value of the company, and the value of the company is determined by individuals who buy and sell stock.” (App. at 290-91.) That sweeping statement, which even the attorney attempted to walk back at oral argument before us, underscores the flaw in the Majority’s approach to post-Sylvester objective reasonableness. If it is unnecessary to measure a SOX complainant’s reasonable belief against at least some of the elements of securities fraud, like materiality, then virtually any internal questioning of an accounting mistake or a judgment call turns the questioner into a SOX whis-tleblower, and that cannot be right.
As the District Court correctly noted, Wiest “failed ... to plead facts reflecting [his] reasonable belief that his communications regarding the tax treatment of certain company expenses related — in any way, definitively and specifically, or otherwise — to shareholder fraud or a violation of one of the statutes or rules listed in § [806].” Wiest v. Lynch, No. 10-3288, 2011 WL 5572608, at *4 (E.D.Pa. Nov. 16, 2011). The District Court recognized that the protection afforded SOX whistleblow-ers is limited to communications that relate to violations of the law specified in § 806, and it assessed the reasonableness of Wiest’s alleged belief consistent with the *147 explicit scope of § 806. The thoughtful opinion of the District Court is entirely sound in that regard, and I would therefore affirm the judgment against the Appellants.

. In contrast to § 806, other whistleblower statutes often identify the targeted wrongdoing within the same statutory scheme. See, e.g., 42 U.S.C. § 7622(a)(1) (defining protected conduct pursuant to the Clean Air Act as having "commenced, caused to be commenced, or [to be] about to commence ... a proceeding” under the Act or testifying or assisting in such a proceeding); 42 U.S.C. § 5851(a)(1) (defining protected conduct pursuant to the Energy Reorganization Act as having notified an employer of a violation of the Act, refusing to engage in practices prohibited by the Act, or commencing or testifying in a proceeding regarding violations of the Act); 30 U.S.C. § 815(c)(1) (defining protected conduct pursuant to the Federal Mine Safety and Health Act as having "filed or made a complaint under or related to” the Act); 29 U.S.C. § 158(a)(4) (defining protected conduct pursuant to the National Labor Relations Act as having "filed charges or given testimony” under the Act); 31 U.S.C. § 3730(h)(1) (defining protected conduct under the False Claims Act as "lawful acts done by the employee[ ] ... in furtherance of an action under [the Act] or other efforts to stop 1 or more violations of [the Act]”).

. The Majority contends that “whether an employee’s communication is indeed 'protected activity' under § 806 is distinct from whether the employer had reason to suspect that the communication was protected.” (Majority Op. at 134.) That, however, is contradicted by what the Majority acknowledges is the second element of a § 806 claim, namely that the employer “knew or suspected that the employee engaged in the protected activity.” {Id. at 129 (internal quotation marks omitted).) The communication of a suspected fraud is the protected activity.

. See, e.g., Van Asdale v. Int’l Game Tech., 577 F.3d 989, 996-97 (9th Cir.2009) (deferring to the ARB's determination that an "employee’s communications must 'definitively and specif *140 ically’ relate to [one] of the listed categories of fraud or securities violations under [§ 1514A]”); Day v. Staples, Inc., 555 F.3d 42, 55 (1st Cir.2009) ("The employee must show that his communications to the employer specifically related to one of the laws listed in § 1514A.”); Welch v. Chao, 536 F.3d 269, 275 (4th Cir.2008) ("[A]n employee must show that his communications to his employer definitively and specifically relate [d] to one of the laws listed in § 1514A." (internal alteration and quotation marks omitted)); Allen v. Admin. Review Bd., 514 F.3d 468, 476 (5th Cir.2008) (“We agree with the ARB’s legal conclusion that an employee’s complaint must definitively and specifically relate to one of the six enumerated categories found in § 1514A.” (internal quotation marks omitted)).

. The rather tenuous connection between the company’s conduct and "fraud against shareholders” that the Sylvester employees asserted was that, "by covering up clinical research fraud ... Parexel engaged in fraud against its shareholders, financial institutions, and others” because disclosure of the compliance failures would have been "at the expense of the long-term financial performance of the company ... [and] would have significantly reduced Parexel’s revenue and reputation.” Sylvester v. Parexel Int’l LLC, 32 IER Cases 497, 501 (U.S. Dep’t of Labor May. 25, 2011) (en banc).

. Chevron deference extends only to reasonable agency interpretations of ambiguous statutory language. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("[I]f the statute is silent or ambiguous ..., the question for the court is whether the agency’s answer is based on a permissible construction of the statute.”). For several reasons, including those discussed herein, I question whether the ARB's interpretation of the requirements of a § 806 claim, as expressed in Sylvester, represents a reasonable and thus permissible construction of the statute.

. As the ARB sees it, the “plain language” of § 806 somehow demands a different result from the one it previously insisted on in Platone. See Sylvester, 32 IER Cases at 508 (saying that "the ALJ failed to focus on the plain language of the SOX whistleblower protection provision”). Quoting not the statute, but its legislative history, the ARB says that § 806 protects " 'all good faith and reasonable reporting of fraud.’ ” See id. (quoting 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26, 2002)). That broad statement does not support the standardless liability imposed by Sylvester, but, more to the point, we are not trying to apply legislative history. Our job is to interpret and apply the statute itself. The plain language of § 806 protects only reporting of conduct that an employee “reasonably believes” constitutes a violation of one of four specific fraud provisions set forth in federal criminal law, or certain SEC rules and regulations, or, at the catch-all level, any other provision of federal law that targets "fraud against shareholders.” 18 U.S.C. § 1514A(a)(1).

. Moreover, prior to Sylvester, our sister circuits treated the "definitive and specific” requirement as separate from the statutory requirement of reasonable belief. See, e.g., Welch, 536 F.3d at 275 ("To ... establish that he engaged in protected activity, an employee must show that he had both ‘a subjective belief and an objectively reasonable belief' that the conduct he complained of constituted a violation of relevant law. Additionally, an employee must show that his communications to his employer 'definitively and specifically relate[d]’ to one of the laws listed in § 1514A.”); Van Asdale v. Int’l Game Tech., 577 F.3d 989, 1000 (9th Cir.2009) (noting, after determining that the plaintiffs satisfied the "definitively and specifically” standard from Platone, that they must also have a reasonable belief concerning a violation of a listed law in order "to trigger the protections of the Act”); Day, 555 F.3d at 54 (treating the “definitively and specifically” requirement and “reasonable belief” requirement separately); Allen, 514 F.3d at 477 (same). Consequently, although the ARB eliminated the "definitive and specific” standard as “an inappropriate test ... [that] is often applied too strictly,” 32 IER Cases at 509, the determination of the objective reasonableness of a SOX complainant's belief remains a necessity.

. The Majority follows the ARB’s approach, concluding that a “whistleblower's communication need not ring the bell on each element of one of the stated provisions of federal law in [§ 806]” (Majority Op. at 134), without specifying which, if any, bells must be rung.

. The Majority perceives no inconsistency because it "doles] not think Congress intended such a formalistic approach to the question of whether an employee has engaged in 'protected activity.’ ” (Majority Op. at 132.) I do not agree that requiring that an allegedly protected communication clearly relate to one of the laws enumerated in § 806 is an exercise in formalism. But even if it were, Congress has expressed its intent in the text of the statute, which sets forth the particular laws that may give rise to a SOX whistleblower claim.

. The Majority correctly points out that an employee’s reasonable belief may not always be determined as a matter of law or on the basis of averments in a complaint. However, a SOX whistleblower's claim must be based on allegations of mail, wire, and securities fraud, which are required to be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b) or are subject to the heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat. 737 (1995). Rule 9(b) "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits,” In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997), while the PSLRA is intended to "curb frivolous lawyer-driven litigation, while preserving the [plaintiffs’] ability to recover on meritorious claims,” Winer Family Trust v. Queen, 503 F.3d 319, 326 (3d Cir.2007). Notwithstanding the ARB’s conclusion that those sorts of heightened pleading requirements "should not be applied to SOX whistleblower claims,” Sylvester, 32 IER Cases at 505, the same concerns that gave rise to those requirements suggest that communications that serve as the basis of a claim under § 806 should contain something more than vague allegations concerning a possible fraud. I am not suggesting the importation of pleading standards to the review of a whistleblower’s allegedly prqtected communications. I am suggesting that it is not too much to ask for some specificity, especially since SOX whistleblower protection has the effect of shielding an employee from any disciplinary action and should not be lightly granted.

. We are not required to follow — and arguably are constitutionally compelled to reject— an agency’s reversal of course that contradicts prior judicial interpretations of a statute. “Article III courts do not sit to render decisions that can be reversed or ignored by executive officers.” Nat’l Cable & Telecommc’ns Ass'n v. Brand X Internet Servs., 545 U.S. 967, 1017, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) (Scalia, J., dissenting) (citing Chicago & S. Air Lines Inc. v. Waterman S.S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948)). "Once [a court] ha[s] determined a statute's meaning, [it] adhere[s] to [its] ruling under the doctrine of stare decisis, and [it] assess[es] an agency's later interpretation of the statute against that settled law.” Neal v. United States, 516 U.S. 284, 295, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996). In this case, numerous courts of appeals, see supra note 3, have construed SOX § 806 as requiring that a complainant’s communications include the elements of one or more of the referenced laws. Under the Majority’s approach, the ARB will be "able to disregard that construction and seek Chevron deference for its contrary construction the next time around.” Nat’l Cable & Telecommc’ns Ass’n, 545 U.S. at 1017, 125 S.Ct. 2688 (Scalia, J., dissenting). Stare decisis is not a straitjacket, but it must mean something more than “this is the law until the executive branch unilaterally changes its mind.”

. My colleagues in the Majority appear to have been persuaded by an allegation in Wiest’s complaint that, but for his intervention, the Atlantis Event would have resulted in "a misstatement of accounting records and a fraudulent tax deduction.” (Majority Op. at 124 (quoting App. at 43-44) (internal quotation marks omitted).) Following the Majority's instruction that the determination of reasonable belief "should be based upon all of the attendant circumstances, and not be lim *145 ited to the facts conveyed by a whistleblower to the employer” (id. at 134), Wiest’s Atlantis Event allegation is belied by the record and is inconsistent with applicable tax law. Wi-est’s email regarding the Atlantis Event simply requested that “the relevant tax department resources” review the proposed costs to determine if some would not have been fully deductible as business expenses but rather would have to be treated as employee compensation and reported as income to employees attending. (See App. at 102 (suggesting that the "meal and entertainment portions” might "fall into the 50% deductibility classification for tax purposes” and that expenses associated with spouses and friends attending the event should be "recorded as income to the employees attending”).) As Wiest himself admits in his complaint, the result of that review was that Tyco determined that "[t]he trip did not qualify as a business expense per IRS guidelines and[ ] ... would have to be treated as an award and as income to the attendees and reported on their W-2s.” (App. at 45.) Compensation to employees is treated as a business expense for federal tax purposes, see I.R.C. § 162(a)(1), so the cost would have been deductible for Tyco under either scenario. The classification of the cost of the Atlantis Event, while significant to employees for whom it represented taxable compensation, was irrelevant for purposes of Tyco’s public financial statements, and, even if the error had gone uncorrected, it is a huge stretch to say that such a mistake would constitute shareholder fraud.