**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4257
_____

JEFFREY A. WIEST; LAURA E. WIEST, HIS WIFE,

Appellants

v.

THOMAS J. LYNCH, Chief Executive Officer and Director
of Tyco Electronics Corporation; TERRENCE CURTIN,
Executive Vice President and Chief Financial Officer of Tyco
Electronics Corporation; CHARLES POST, ESQUIRE,
Senior Labor & Employment Counsel; CHARLES
DOUGHERTY, President, Wireless Systems, A Tyco
Business Unit; TYCO ELECTRONICS CORPORATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-03288)
District Judge: Honorable Gene E.K. Pratter
_____

Argued October 5, 2012

Before:    McKEE, *Chief Judge*, JORDAN and VANASKIE,
*Circuit Judges*

(Filed:  March 19, 2013)

Richard C. Angino, Esq. (Argued)
Daryl E. Christopher, Esq.
Angino & Rovner, P.C.
4503 North Front Street
Harrisburg, PA 17110
        *Counsel for Appellants*

Stephen M. Kohn, Esq. (Argued)
Kohn, Kohn & Colapinto
3233 P. Street, N.W.
Washington, D.C. 20007
        *Counsel for Amicus Curiae National Whistleblowers
        Center*

Michael A. Finio, Esq. (Argued)
Amy C. Foerster, Esq.
Cory S. Winter, Esq.
Saul Ewing LLP
2 North 2nd Street
7th Floor
Harrisburg, PA 17101
        *Counsel for Appellees*

Eugene Scalia, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Counsel for Amicus Curiae Chamber of Commerce of the United States of America*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

Appellant Jeffrey Wiest brought an action under the whistleblower protection provisions set forth in Section 806 of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and under Pennsylvania law against Appellees Tyco Electronics Corporation and several officers and directors of Tyco Electronics (collectively, "Tyco"). The District Court granted Tyco's Motion to Dismiss the federal whistleblower claims, declined to exercise supplemental jurisdiction over the state law claims, and denied Wiest's Motion for Reconsideration. Concluding that the District Court erred in requiring that Wiest allege that his communications to his supervisors "definitively and specifically relate to" an existing violation of a particular anti-fraud law, as opposed to expressing a reasonable belief that corporate managers are taking actions that could run afoul of a particular anti-fraud law, we will reverse, in part, the dismissal of the federal whistleblower claims and vacate the dismissal of the state law claim.

I.

A.    Background

According to the Complaint, Wiest worked for approximately thirty-one years in Tyco's accounting

3

department until his termination in April 2010. For Wiest's last ten years of employment, his office was under "a high level of audit scrutiny" due to the well-known corporate scandal involving its former parent company, Tyco International, and its CEO, Dennis Kozlowski. (App. 42, ¶ 31.) Around 2007, Wiest "established a pattern of rejecting and questioning expenses" that failed to satisfy accounting standards or securities and tax laws. (*Id.* at 43, ¶ 33.)

### 1. The Atlantis Resort Event

In mid-2008, Wiest refused to process a payment and sent an email to his supervisor regarding an event that Tyco intended to hold at the Atlantis Resort in the Bahamas, which was similar to a corporate party under Kozlowski's management that had drawn significant criticism. Expenses for the $350,000 Atlantis event included "Mermaid Greeters" and "Costumed Pirates/Wenches" at a cost of $3,000; a "Tattoo Artist (includes tattoos)" and "Limbo" and "Fire" at a cost of $2,350; chair decorations at a cost of $2,500; and hotel room rentals ranging from $475 to $1,000 per night. (*Id.* at 45, ¶ 41.) In an email to his supervisor, Wiest expressed his belief that the costs were inappropriately charged entirely as advertising expenses. He asserted that the costs needed to be detailed and charged as income to attending employees because the employees were bringing guests, and the expenses needed to "be reviewed for potential disallowance by a taxing authority based on excessive/extravagant spend [sic] levels." (*Id.* at 84, Ex. E.) Following Wiest's email, Tyco's management determined that the five-day event included only a single one-and-one-half hour business meeting. As a result, they determined that processing the payment "would have resulted in a misstatement of

4

accounting records and a fraudulent tax deduction," and that Tyco needed to treat the event as income for attending employees. (*Id.* at 43-44, ¶ 35.) Tyco decided to proceed with the event and to compensate the attendees for the additional tax liability by increasing (i.e., "grossing-up") their bonuses.

### 2. The Venetian Resort Event

Also in mid-2008, Wiest received a request to process a payment of $218,000 for a conference at the Venetian Resort in Las Vegas, Nevada. The request lacked both sufficient documentation for tax purposes and proper approval pursuant to Tyco's "delegation of authority." Additionally, the request included inaccurate accounting and tax treatment information. At Wiest's direction, one of his subordinates sent an email to the Tyco employee who submitted the request, explaining that the accounts payable department could not process the request until it had received an agenda and business purpose for the event, correct accounting treatment for various expenses, and approval pursuant to Tyco's delegation of authority. The tax department eventually concluded that the conference served a business purpose, and the accounts payable department subsequently allowed the payment.

### 3. The Wintergreen Resort Event

In late 2008, Wiest was presented with a request for approval of a conference at the Wintergreen Resort in Virginia in the amount of $335,000. Like the Venetian Resort request, the Wintergreen expense request lacked both sufficient documentation and proper approval from Tyco's CEO. Wiest emailed his supervisor, explaining that he

believed Tyco's internal policies required that the CEO be notified about the transaction. To the best of Wiest's knowledge, Tyco processed the payment without the CEO's approval, in violation of Tyco's internal policies.

### 4. Other Matters

Wiest also alleges that he questioned other events between 2007 and 2009. In particular, he questioned expenses for a "relatively lavish 'holiday party,'" a $52,000 audit team meeting, and an employee baby shower. (*Id.* at 49, ¶ 55.) He also sent an email to management when he received an expense request from an employee that included duplicate entries, additional nights of hotel bills, and undocumented expenses. He informed management that processing that improper expense request would constitute invalid or undocumented business expenses if Tyco was not reimbursed or if the amount was not reported as income on the employee's W-2 form.

### 5. Termination of Employment

Wiest alleges that Tyco became frustrated with his persistence in following proper accounting procedures. In September 2009, two human resources employees met with Wiest and informed him that he was under investigation for incorrectly reporting the receipt of two basketball game tickets in August 2009, for having a relationship with a co-worker ten years earlier, and for allegedly making sexually-oriented comments to co-workers. After Wiest learned of the investigation, his health declined and he went on medical leave. Seven months later, Tyco terminated his employment.

### B. Procedural History

6

On July 7, 2010, Wiest sued the Tyco Defendants, asserting that his discharge was in retaliation for his reports of improper expenditures, in violation of Section 806 of SOX. That section prohibits certain employers from discriminating against employees for reporting information that they reasonably believe constitutes a violation of one of several enumerated provisions relating to fraud and securities regulations. *See* 18 U.S.C. § 1514A.[1] Wiest also presented state law claims, including intentional infliction of emotional distress and wrongful termination, and his wife brought a claim for loss of consortium. Tyco moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that Wiest failed to state a prima facie claim under Section 806.

As to the threshold question for a prima facie case in a retaliation case under Section 806 – whether the Complaint sufficiently alleges that the plaintiff had engaged in "protected activity," *see* 29 C.F.R. § 1980.104(e)(2)(i) – the District Court determined that Wiest had to allege that his communications (a) "definitively and specifically" related to a statute or rule listed in Section 806; (b) expressed "'an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss;'" and (c) "reflect[ed] a reasonable belief of an existing violation." *Wiest v. Lynch*, Civil Action No. 10-3288, 2011 WL 2923860, at *4 (E.D. Pa. July 21, 2011) (citations omitted). In concluding that a

---

[1] The enumerated provisions are mail fraud, wire fraud, bank fraud, securities fraud, "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ." 18 U.S.C. 1514A.

communication must "definitively and specifically" relate to a violation of a statute or rule listed in Section 806, the District Court relied upon the decision of the U.S. Department of Labor Administrative Review Board ("ARB") in *Platone v. FLYI, Inc.*, ARB 04-154, 2006 WL 3246910, at *8 (Dep't of Labor Sept. 29, 2006), *aff'd* 548 F.3d 322 (4th Cir. 2008), and court decisions that endorsed *Platone*'s "definitive and specific" standard. Finding that the allegations of the Complaint failed to satisfy this standard, the District Court did not reach the other elements of a prima facie Section 806 case, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the Complaint without prejudice.

The District Court's Order dismissing the Complaint granted Wiest leave to file an amended complaint. Rather than filing an amended complaint, Wiest, on August 10, 2011, presented a motion entitled "Motion for Reconsideration Nunc Pro Tunc By the Eastern District Court En Banc of Judge Pratter Memorandum Opinion of July 21, 2011, Or, In the Alternative, Motion to Dismiss Plaintiffs' Complaint with Prejudice and Enter a Final Appealable Order and Judgment" ("Motion for Reconsideration"). In his Motion for Reconsideration, Wiest raised for the first time the argument that the ARB overruled *Platone*'s "definitive and specific" standard in favor of a "reasonable belief" standard in *Sylvester v. Parexel Int'l LLC*, ARB 07-123, 2011 WL 2165854, at *11 (Dep't of Labor May 25, 2011) (en banc). Wiest argued that he was entitled to reconsideration because *Sylvester* was an intervening change in controlling law, and that the District Court's reliance on the ARB's prior *Platone* decision was a clear error of law.

The District Court disagreed, reasoning that *Sylvester* was not an intervening decision because, although the ARB issued *Sylvester* after the parties completed briefing on Tyco's Motion to Dismiss, the opinion preceded the District Court's ruling. Additionally, the District Court determined that *Sylvester* was not controlling precedent, and that even if it was binding, reconsideration was not warranted because (1) its initial decision relied on cases other than *Platone*, and (2) *Sylvester*'s alteration of the standard for demonstrating protected activity did not change its conclusion that Wiest failed to establish that he communicated an objectively reasonable belief that Tyco's conduct violated any statute or rule listed in Section 806.

Wiest filed a notice of appeal on November 23, 2011, to appeal the District Court's Order denying his Motion for Reconsideration. Wiest did not expressly indicate whether he also was appealing the District Court's initial Order dismissing the Complaint.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have appellate jurisdiction under 28 U.S.C. § 1291.

A.      Procedural Issues

Before turning to the merits, we must address three procedural issues. First, Tyco argues that, because Wiest filed his Motion for Reconsideration twenty days after the District Court entered its dismissal Order, the Motion was untimely under E.D. Pa. L.R. 7.1(g), which establishes a

9

fourteen day period to file motions for reconsideration.[2]  As a result, Tyco asserts that we lack jurisdiction over Wiest's appeal from the District Court's denial of reconsideration.

We see no jurisdictional bar due to Wiest's failure to move for reconsideration within the time constraints established by a local rule of court.  We have recognized that, in the context of a Federal Rule of Civil Procedure 59(e) motion to alter or amend a judgment, the prescribed time limits are claims-processing rules, rather than jurisdictional rules.  *Lizardo v. United States*, 619 F.3d 273, 276-77 (3d Cir. 2010).  If the time limit contained within Rule 59(e) is not jurisdictional, we cannot see how the time limit contained within Local Rule 7.1(g) is jurisdictional.  In any event, we need not address the consequences of an untimely motion for reconsideration under a local rule because we construe Wiest's motion as one under Rule 59(e).  *See, e.g.*, *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) ("For purposes of Rule 4(a) of the Federal Rules of Appellate Procedure, we view a motion characterized only as a motion for reconsideration as the functional equivalent of a Rule 59(e) motion to alter or amend a judgment.") (internal quotation marks omitted)); *see also Green v. Drug Enforcement Admin.*, 606 F.3d 1296, 1299 (11th Cir. 2010) (noting the prevalence of courts construing motions for reconsideration as Rule 59(e) motions); *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("A 'motion for reconsideration' is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed as

---

[2]  The District Court noted that the Motion for Reconsideration was untimely under Local Rule 7.1(g), but nonetheless decided the motion on the merits.

either a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment."). Because Wiest filed his Motion for Reconsideration within Rule 59(e)'s twenty-eight day time limit, we conclude that the motion was timely.

Tyco also argues that the scope of our review is limited to the District Court's November 2011 Order denying reconsideration because Wiest did not designate for appeal the District Court's July 2011 Order granting Tyco's Motion to Dismiss. When a party appeals only a specified judgment, we acquire jurisdiction to review only that judgment or a judgment "'fairly inferred'" by the notice of appeal. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977)). Yet, we have also held that we "liberally construe[] notices of appeal." *Id.* (internal quotations marks omitted). We may exercise appellate jurisdiction over orders not specified in the notice of appeal where: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Id.* (internal quotation marks omitted).

Here, there is an adequate connection between the District Court's Order denying reconsideration and its underlying Order granting Tyco's Motion to Dismiss because Wiest requested the District Court to reconsider the legal standard it applied to his Section 806 claims in the original dismissal Order. Second, because the two Orders of the District Court were intertwined, we infer that Wiest intended to appeal the underlying dismissal Order. Wiest's intention

11

was apparent in his principal brief, in which he argues that the District Court erred in granting Tyco's Motion to Dismiss because it relied on the *Platone* standard rather than *Sylvester* and cites the District Court's dismissal Order throughout the brief. Third, we find no prejudice to Tyco in reviewing the underlying dismissal Order as Tyco has had a full opportunity to brief the corresponding issues.[3] As a result, we exercise jurisdiction over both the District Court's November 2011 Order denying Wiest's Motion for Reconsideration and its July 2011 Order granting Tyco's Motion to Dismiss.

Finally, we also reject Tyco's third procedural argument that Wiest waived any arguments based on *Sylvester* because he failed to raise those arguments in his brief in opposition to Tyco's Motion to Dismiss. Although the District Court noted that Wiest first brought *Sylvester* to its attention in his Motion for Reconsideration and that a motion for reconsideration should not raise new arguments that the party could have made previously, the District Court proceeded to address *Sylvester* in its reconsideration ruling. The District Court evidently did not deem Wiest to have waived any arguments based on *Sylvester*, and neither do we.

### B. Standard of Review

We have held that "a proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change

---

[3] In addition, we have also held more plainly that "[a] timely appeal from a denial of a Rule 59 motion to alter or amend 'brings up the underlying judgment for review.'" *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) (quoting *Quality Prefabrication, Inc. v. Daniel J. Keating Co.*, 675 F.2d 77, 78 (3d Cir. 1982)).

in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). We generally review a district court's denial of reconsideration for abuse of discretion. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999) (citing *N. River Ins.*, 52 F.3d at 1203). An "errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact" may result in an abuse of discretion. *McDowell v. Phila. Housing Auth.*, 423 F.3d 233, 238 (3d Cir. 2005). More specifically, when a district court predicates its denial of reconsideration on an issue of law, our review is plenary, and when it bases its denial on an issue of fact, we review for clear error. *Id.*

In addition, we review a district court's dismissal pursuant to Rule 12(b)(6) *de novo*. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). In *Long v. Atlantic City Police Department*, 670 F.3d 436 (3d Cir. 2012), we concluded that the standards of review for an underlying dismissal order and for the denial of a motion for reconsideration of the dismissal order are functionally equivalent, because we exercise plenary review of the dismissal order as well as of the legal questions in the denial of reconsideration. *Id.* at 446 & n.20, 447. Because the issue here is whether the District Court applied the correct legal standard to a claim under Section 806 of SOX, our review is plenary regardless of whether we review the District Court's application of the standard in its initial dismissal Order or its subsequent Order denying reconsideration.

C. Whistleblower Claims Under Section 806 of SOX

SOX Section 806 prohibits publicly traded companies and their employees from retaliating against an employee who

> provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341[mail fraud], 1343 [wire, radio, or television fraud], 1344 [bank fraud], or 1348 [securities and commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information is provided to or the investigation is conducted by . . . a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

18 U.S.C. § 1514A. To establish a prima facie case for a Section 806 claim, the employee must allege that he or she (1) "engaged in a protected activity;" (2) "[t]he respondent

14

knew or suspected that the employee engaged in the protected activity;" (3) "[t]he employee suffered an adverse action;" and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2)(i)-(iv).

Section 806 provides that an employee alleging discrimination in violation of SOX may file a complaint with the Secretary of Labor, who may issue a final order. 18 U.S.C. § 1514A(b)(1)(A), (2) (incorporating the Department of Labor complaint procedures under 49 U.S.C. § 42121(b)). If the Secretary fails to issue a final decision within 180 days of the filing of the complaint, the complainant may also file a civil action in federal district court. *Id.* § 1514A(b)(1)(B). The Secretary of Labor has delegated the authority to review appeals under Section 806 and issue final agency decisions to the ARB. Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 75 Fed. Reg. 3924, 3924-25 (Jan. 25, 2010).

Focusing on the "protected activity" prong in its Memorandum accompanying its Order granting Tyco's Motion to Dismiss, the District Court invoked the ARB's opinion in *Platone* and concluded that "[f]or a communication to be protected, it must 'definitively and specifically' relate to one of the statutes or rules listed in" Section 806. *Wiest*, 2011 WL 2923860, at \*4. The Court of Appeals cases cited by the District Court in support of its application of the "definitive and specific" standard either relied upon or cited with approval *Platone*'s standard. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009) (deferring to *Platone*'s "definitive and specific" standard as a reasonable interpretation of the statute); *Day v.*

15

*Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009) (quoting the Fourth Circuit's opinion affirming the ARB's decision in *Platone* in which the court employed the "definitive and specific" standard); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476-77 (5th Cir. 2008) ("We agree with the ARB's legal conclusion that an employee's complaint must 'definitively and specifically relate' to one of the six enumerated categories found in" Section 806).

In *Sylvester*, however, the ARB abandoned the "definitive and specific" standard announced in *Platone*. *Sylvester*, 2011 WL 2165854, at \*15. The ARB noted that the test adopted in *Platone* originated in cases under the whistleblower provision in the Energy Reorganization Act, 42 U.S.C. § 5851 ("ERA"). *Id.* at \*14. The ARB explained that, in addition to enumerating specific activities for which employers cannot retaliate against employees, the whistleblower provision of the ERA contains a catch-all provision to protect employees who "assist or participate in 'a proceeding ... or any other action [designed] to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended." *Id.* (quoting 42 U.S.C. § 5851(a)(1)(F)). According to the ARB, because the ERA does not define "any other action to carry out the purposes of this chapter," courts interpreted that phrase to require that an employee's activity definitively and specifically implicate safety because of the ERA's purpose of protecting employee actions involving nuclear safety. *Id.*

As the ARB recognized in *Sylvester*, the SOX whistleblower provision does not contain language similar to the ERA's catch-all provision. *Id.* Instead, it expressly enumerates the laws and rules to which it applies. Therefore,

16

the ARB concluded that the importation of the definitive and specific standard is "inapposite to the question of what constitutes protected activity under SOX's whistleblower protection provision." *Id.* Moreover, the ARB determined that the definitive and specific standard potentially conflicts with the statutory language of Section 806, which prohibits retaliation against employees for reporting information that he or she *reasonably believes* violates SOX. *Id.*[4]

---

[4] In decisions issued subsequent to *Sylvester*, the ARB has asserted that the definitely and specifically standard does in fact conflict with the language of Section 806. *See Zinn v. Am. Commercial Lines, Inc.*, ARB No. 10-029, 2012 WL 1102507, at *4 n.33 (Dep't of Labor March 28, 2012) ("[T]he 'definitive and specific' standard employed in prior ARB cases is inconsistent with the statutory language of Section 806."); *Prioleau v. Sikorski Aircraft Corp.*, ARB No. 10-060, 2011 WL 6122422, at *6 n.3 (Dep't of Labor Nov. 9, 2011) ("In *Sylvester*, we made clear that the "definitive and specific" standard that the ARB had employed in prior ARB cases . . . was inconsistent with Section 806's statutory language."); *Reamer v. Ford Motor Co.*, ARB No. 09-053, 2011 WL 3307575, at *3 n.3 (noting that the ARB "has criticized the use of 'definitively and specifically' as a standard for an employee's reasonable belief of a violation of the laws listed under Section 806."); *Inman v. Fannie Mae*, ARB No. 08-060, 2011 WL 2614298, at *6 (Dep't of Labor June 28, 2011) (finding error in the ALJ's use of the "definitive and specific" standard because it is inconsistent with the statutory language of Section 806); *Mara v. Sempra Energy Trading, LLC*, ARB No. 10-051, 2011 WL 2614345, at *7 (Dep't of Labor June 28, 2011) (same).

17

SOX does not define what constitutes a "reasonable belief." The ARB interprets the phrase to require that the plaintiff have a subjective belief that the employer's conduct violates a provision listed within Section 806 and that the belief is objectively reasonable. *Id.* at \*11-12. Indeed, as the ARB noted in *Sylvester*, the legislative history of Section 806 provides that Congress intended this reasonable belief standard to "impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts (*See generally*, *Passaic Valley Sewerage Commissioners v. U.S. Department of Labor*, 992 F.2d 474, 478 [3d Cir. 1993])." *Id.* at \*11 (quoting S. Rep. No. 107-146, at 19 (2002)).

The ARB opined that to meet the subjective element, the plaintiff must actually have believed that the conduct in question violated the laws enumerated in SOX. *Id.* The ARB explained that "the legislative history of Sarbanes-Oxley makes clear that its protections were 'intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise.'" *Id.* (alteration omitted) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1002 (9th Cir. 2009) (quoting 148 Cong. Rec. S7418-01, (daily ed. July 26, 2002))). Regarding the objective element, the ARB clarified that the plaintiff's belief "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.* at \*12 (quoting *Harp v. Charter Commc'ns, Inc.*, 588 F.3d 722, 723 (7th Cir. 2009)).

We conclude that the ARB's rejection of *Platone*'s "definitive and specific" standard is entitled to *Chevron* deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def.*

*Council*, 467 U.S. 837, 842-43 (1984) ("If . . . the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute."). As previously discussed, Section 806 provides that an employee seeking whistleblower protection under SOX may file a complaint with the Secretary of Labor, who may issue a final order. 18 U.S.C. § 1514A(b)(1)(A). The Secretary of Labor has delegated the authority to review appeals under Section 806 and issue final agency decisions to the ARB. Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 75 Fed. Reg. 3924, 3924-25 (Jan. 25, 2010). In *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Supreme Court recognized that "express congressional authorizations to engage in the process of . . . adjudication that produces . . . rulings for which deference is claimed," is "a very good indicator of delegation meriting *Chevron* treatment . . . ." *Id.* at 229. The Court further explained that "[i]t is fair to assume generally that Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure," including formal adjudication. *Id.* at 230 & n.12. Applying *Mead*, the Ninth Circuit held that the ARB's interpretation of Section 806 warranted *Chevron* deference based on this statutory and administrative delegation. *Welch v. Chao*, 536 F.3d 269, 276 & n.2 (9th Cir. 2008). We agree and hold that the ARB's interpretation of the "reasonable belief" standard is entitled to *Chevron* deference.

The fact that the ARB reconsidered and abandoned the "definitive and specific" standard does not preclude our deference to the reasonable belief standard it subsequently

19

announced in *Sylvester*. In *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), the Court explained that "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." *Id.* at 981. The Court elaborated that "if the agency adequately explains the reasons for a reversal of policy, change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Id.* (internal quotation marks omitted). Here, the ARB thoroughly explained why it reversed the course it previously set in *Platone*. *See Sylvester*, 2011 WL 2165854, at *14-15. Therefore, *Chevron* deference applies.

While agreeing that the definitive and specific standard should be jettisoned, amicus curiae National Whistleblower Center ("NWC") contends that the objective belief standard established in *Sylvester* is too stringent. NWC argues that Section 806 protects an employee as long as he or she has a good faith belief in the existence of a violation. For support, NWC relies on our decision in *Passaic Valley Sewerage Commissioners v. U.S. Department of Labor*, 992 F.2d 474 (3d Cir. 1993).

In *Passaic Valley*, we interpreted the whistleblower provision of the Clean Water Act, which protects employees who have "filed, instituted, or caused to be filed or instituted any proceeding under" the Clean Water Act. *Id.* at 478 (quoting 33 U.S.C. § 1367(a)). At issue was whether the term "proceeding" included internal complaints. *Id.* at 475. We noted that, if the whistleblower provision was to accomplish the goals of the statute, then "employees must be free from

20

threats to their job security in retaliation for their good faith assertions of corporate violations of the statute." *Id.* at 478. Affording *Chevron* deference to the Secretary's interpretation, we upheld his construction that "all good faith intracorporate allegations are fully protected from retaliation under" the Clean Water Act's whistleblower provision. *Id.* at 480.

Because the legislative history of Section 806 references *Passaic Valley* in stating Congress's intention "to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts," S. Rep. No. 107-146, at 19 (2002), NWC contends that Congress intended to adopt *Passaic Valley*'s good faith belief test as the only standard to meet in bringing a claim under Section 806. We disagree. First, at issue in *Passaic Valley* was the meaning of the term "proceeding," *Passaic Valley*, 992 F.2d at 478, not the phrase "reasonably believes." As a result, its standard does not control the issue at hand. Second, a good faith belief goes to the employee's subjective belief that a violation occurred, which is only one element of the reasonable belief standard applicable to Section 806. Therefore, whatever guidance *Passaic Valley* provides, it relates only to the subjective element of a reasonable belief test. As explained in *Sylvester*, the reasonable belief standard also includes an objective element. *Sylvester*, 2011 WL 2165854, at *11. As we did in *Passaic Valley*, and as explained above, we defer to the administering agency's reasonable interpretation of the statute. As a result, an employee must establish not only a subjective, good faith belief that his or her employer violated a provision listed in SOX, but also that his or her belief was objectively reasonable. *Id.* at *11. A belief is objectively reasonable when a reasonable person with the same training

and experience as the employee would believe that the conduct implicated in the employee's communication could rise to the level of a violation of one of the enumerated provisions in Section 806. *Id.* at *11-12.

The Dissent contends that we have adopted an internally inconsistent test by recognizing that an employee must have an objectively reasonable belief of a violation of one of the listed federal laws but not a reasonable belief that each element of a listed anti-fraud law is satisfied. We perceive no inconsistency because we do not think Congress intended such a formalistic approach to the question of whether an employee has engaged in "protected activity." As so aptly stated by our dissenting colleague, the purpose of "[w]histleblower statutes like SOX § 806 [is] to protect people who have the courage to stand against institutional pressures and say plainly, 'what you are doing here is wrong' . . . in the particular way identified in the statue at issue." (Dissenting Op. Typescript at 1.) By identifying conduct that falls within the ample bounds of the anti-fraud laws, an employee has done just that. That employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder's investment decision. "Congress chose statutory language which ensures that 'an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories [set forth in § 806] is protected.'" *Van Asdale*, 577 F.3d at 1001 (quoting *Allen*, 514 F.3d at 477). An employee's lack of knowledge of certain facts that pertain to an element of one of the anti-fraud laws would be relevant to, but not dispositive

22

of, whether the employee did have an objectively reasonable belief that a listed anti-fraud law had been violated. Indeed, whether an employee has an objectively reasonable belief may not always be decided as a matter of law. *See Allen*, 514 F.3d at 477-78. Indeed, this issue would generally not be amenable to adjudication on the basis of the averments of a complaint that concerns a communication that relates in an understandable way to one of the anti-fraud provisions listed in § 806.

In addition to rejecting the definitive and specific standard that the District Court relied upon in granting Tyco's Motion to Dismiss, *Sylvester* conflicts with two additional legal conclusions reached by the District Court relating to protected activity under Section 806. First, in dismissing Wiest's Complaint, the District Court concluded that an "employee's communication must convey that his concern with any alleged misconduct is linked to 'an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss.'" *Wiest*, 2011 WL 2923860, at *4 (quoting *Day v. Staples, Inc.*, 555 F.3d 42, 56 (1st Cir. 2009)). *Sylvester* expressly rejected such an interpretation. Observing that "[s]ome courts have misinterpreted [*Platone*'s] analysis as a requirement that SOX complainants must allege elements of a securities fraud claim for protection," the ARB reasoned that "requiring a complainant to prove or approximate the specific elements of a securities law violation contradicts the statute's requirement that an employee have a reasonable belief of a violation of the enumerated statues." *Sylvester*, 2011 WL 2165854, at *18. The ARB further explained, "a complainant can engage in protected activity under Section 806 even if he or she fails to

23

allege or prove materiality, scienter, reliance, economic loss, or loss causation." *Id.* We find this interpretation to be reasonable because there is nothing in the statutory text that suggests that a complainant's communications must assert the elements of fraud in order to express a reasonable belief that his or her employer is violating a provision listed in Section 806. Therefore, the District Court erred by requiring that an employee's communication reveal the elements of securities fraud, including intentional misrepresentation and materiality.

Second, the District Court concluded that to constitute protected activity, the information contained within an employee's communication must implicate "a reasonable belief of an *existing* violation." *Wiest*, 2011 WL 2923860, at *4 (emphasis added) (citing *Livingston v. Wyeth*, 520 F.3d 344, 352 (4th Cir. 2008)). *Sylvester* rejected this requirement as well. The ARB held that Section 806 protects an employee's communication about a violation that has not yet occurred "as long as the employee reasonably believes that the violation is likely to happen." *Sylvester*, 2011 WL 2165854, at *13. We find this interpretation of the "reasonably believes" statutory phrase, 18 U.S.C. § 1514A(a)(1), to be reasonable given the statute's purpose to combat corporate wrongdoing. *See* S. Rep. No. 107-146, at 5 (2002) ("Th[e] 'corporate code of silence' not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity."). It would frustrate that purpose to require an employee, who knows that a violation is imminent, to wait for the actual violation to occur when an earlier report possibly could have prevented it.

Contrary to our dissenting colleague's assertion, we are not "ignor[ing] the need for a whistleblower's employer to

24

actually perceive that a whistle has been blown." (Dissenting Op. Typescript at 4.) We agree with the Dissent that, in order for an employer to "know or suspect that the whistleblower-plaintiff is engaged in protected conduct . . . the plaintiff's intra-corporate communications [must] relate in an understandable way to one of the stated provisions of federal law [in § 806]." (*Id.*) But the whistleblower's communication need not ring the bell on each element of one of the stated provisions of federal law to support an inference that the employer knew or suspected that the plaintiff was blowing the whistle on conduct that may fall within the ample reach of the anti-fraud laws listed in § 806. To hold that an employer could not have suspected that the plaintiff was engaged in protected activity because the communication did not recite facts showing an objectively reasonable belief in the satisfaction of each element of one of the listed anti-fraud provisions would eviscerate § 806. An employee may not have access to information necessary to form a judgment on certain elements of a generic fraud claim, such as scienter or materiality, and yet have knowledge of facts sufficient to alert the employer to fraudulent conduct. When an employee communicates these facts to a supervisor, the employer has a sufficient basis to suspect that the employee is protected against reprisal for communicating that information.

Moreover, whether an employee's communication is indeed "protected activity" under § 806 is distinct from whether the employer had reason to suspect that the communication was protected. To show that the communication is protected, the employee must have both a subjective and an objective belief that the conduct that is the subject of the communication relates to an existing or prospective violation of one of the federal laws referenced in

25

§ 806. The communication itself need not reveal all the facts that would cause a reasonable person with the whistleblower's training and background to conclude that a referenced federal law has been or will be violated. That determination should be based upon all the attendant circumstances, and not be limited to the facts conveyed by a whistleblower to the employer. If the communication itself had to convey facts sufficient to support an objectively reasonable belief of a violation of one of the referenced laws, Congress would not have imposed liability upon an employer who merely "suspected" that the communication is protected from reprisal.

In this case, the District Court did not decide this matter on the ground that Wiest's pleadings failed to support a plausible inference that Tyco knew or suspected that Wiest had engaged in protected activity. Instead, the District Court decided that Wiest's Complaint was inadequate because the communications did not "definitively and specifically" relate to a statute or rule listed in § 806 and failed to articulate facts that supported a reasonable belief of actionable fraudulent conduct directed at investors. Consistent with according *Chevron* deference to the ARB's holding in *Sylvester*, we have found that the standards used by the District Court were too stringent. We now turn to Wiest's Complaint to ascertain whether it states a § 806 claim for relief under the standard announced in *Sylvester*.

D.    Application of *Sylvester*'s Reasonable Belief Standard

Although we hold that the District Court applied the wrong legal standard in analyzing Wiest's claims under Section 806, dismissal is still appropriate if Wiest nevertheless failed to plead sufficient facts to state a claim.

*See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) ("We may affirm the district court on any ground supported by the record."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *McTernan v. City of York, Pa.*, 577 F.3d 521, 530 (3d Cir. 2009) (alteration omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

### 1.       The Atlantis Resort Event

The Complaint alleges that Wiest refused to process a payment for and questioned the legitimacy of an extravagant event to be held at the Atlantis Resort. In particular, in a June 3, 2008 email to his supervisor, Wiest explained, among other concerns, that "[a]s submitted, the costs are charged entirely to advertising expense which seems inappropriate and does not address the issue of breaking out the meals and entertainment portions which we feel would fall into the 50% deductibility classification for tax purposes." (App. 84, Ex. E.) The Complaint also alleges that Wiest, like many others, was aware of a similar event held during Kozlowski's tenure. Wiest's email to his supervisor expressed his concerns about Tyco treating the costs of the event as business expenses and his belief that certain costs should be treated as income for the guests. Because of his communication, a review of the expenses revealed that if Tyco had processed the transaction as originally submitted, it "would have resulted in a misstatement of accounting records and a fraudulent tax deduction . . . ." (App. 43, ¶ 35.)

These facts are sufficient to support a plausible inference that Wiest reasonably believed that Tyco's conduct would violate one of the provisions in Section 806 because he

27

foresaw a potentially fraudulent tax deduction and misstatement of accounting records if he did not bring that information to the attention of his supervisors. Furthermore, Tyco's decision to "gross-up" its employees' income by compensating them for extra tax liabilities due to the Atlantis trip not being considered a business expense also plausibly created a reasonable belief in Wiest that a SOX violation would occur, given Wiest's familiarity with Kozlowski having used the "grossing-up" method during the Tyco scandal.

We find that the alleged facts show not only that Wiest subjectively believed that Tyco's conduct may have violated a provision listed in Section 806, but also support an inference that his belief was objectively reasonable. A reasonable person in Wiest's position who had seen the expense request for the extravagant Atlantis event could have believed that treating the Atlantis event as a business expense violated a provision of Section 806, especially given the scrutiny Tyco received during the Tyco International scandal under Kozlowski. We find, therefore, that Wiest pled sufficient facts to establish that his communication relating to the Atlantis event was protected activity under Section 806. As a result, we reverse the District Court's dismissal Order with respect to Wiest's communication relating to the Atlantis event.[5]

_____

[5] The Dissent asserts that the accounting treatment of the Atlantis event does not suggest fraudulent conduct, characterizing the manner in which the event's expenses were originally to be treated as an "error" or "mistake." (Dissenting Op. Typescript at 16 n.12.) That characterization

28

## 2. The Venetian Resort Event

Wiest also alleges that he directed an expense request for an event at the Venetian Resort to be held while the tax department evaluated the business purpose of the event and until his department received proper documentation and accounting treatment. After receiving a revised agenda, the tax department eventually approved the event as a business expense. In an email chain attached to the Complaint relating to the Venetian event, the only reference to Wiest indicates that he asked his subordinate to forward a colleague additional information that Wiest's department had received about the event. That particular email also reveals that although the accounts payable department requested additional review of the expenses, the department "believe[d] the information provided substantiates this [event] as a business expense . . . ." (App. 114, Ex. M.)

---

ignores the fact that we are dealing solely with the allegations of a complaint, which must be viewed in the light most favorable to Wiest. *See Phillips*, 515 F.3d at 233 (holding that, in the wake of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts are still correct to "construe the complaint in the light most favorable to the plaintiff, and [to] determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal quotation marks omitted)). In any event, the issue is not whether the contemplated accounting treatment was or was not part of a scheme to defraud. The issue is whether such accounting treatment could reasonably be believed by Wiest to be fraudulent. Given the Kozlowski scandal, a jury could find that Wiest reasonably believed that the sins of Kozlowski were being repeated.

Even if the facts in the Complaint established that Wiest subjectively believed the expense request for the Venetian event could have violated a provision in Section 806, we conclude that, objectively, a reasonable person in Wiest's position would not have believed that the expense request that initially lacked a detailed agenda and breakdown of expenses would constitute a violation of one of the provisions listed in Section 806. Therefore, we affirm the District's dismissal Order with respect to Wiest's communications relating to the Venetian event.

### 3. The Wintergreen Resort Event

Regarding the $355,000 event that took place at the Wintergreen Resort, Wiest alleges that the initial invoice lacked sufficient documentation and accounting breakdowns. In addition, Wiest alleges that a planned attendee of the event had approved the request instead of Defendant Thomas Lynch, the CEO, as required by Tyco's delegation of authority. Emails relating to the event show that Wiest twice indicated to management that Lynch needed to approve the request. In the first email, Wiest requested clarification from the CFO, Defendant Terrence Curtin, that he was approving the entire cost of the event and asked that Curtin copy Lynch on his response to communicate his approval. After Curtin apparently responded by giving his approval without copying Lynch, Wiest then emailed his supervisor reiterating that he still believed that Lynch should be informed about the matter because Curtin could only approve up to $100,000 for events. Curtin failed to copy Lynch.

The averments of the Complaint support an inference that Wiest subjectively believed that the lack of the CEO's approval, which contravened internal control procedures,

30

would violate one of the provisions enumerated in Section 806. Furthermore, it is plausible that a reasonable person in Wiest's position could have believed that the event's approval by an attendee of the event, who would therefore directly benefit from that approval, instead of by the CEO as required by internal control procedures, may have violated one of the provisions contained in Section 806.[6] Therefore, we reverse the District Court's dismissal Order with respect to Wiest's communications relating to the Wintergreen event.

### 4.     Other Matters

Wiest emailed management in 2007 about an employee who submitted improper expenses to inform management that if it wished to claim the expenses as business expenses then either Tyco would have to be reimbursed or the charges would have to be reported as income for the employee. The allegation and corresponding

---

[6] The Dissent questions whether unauthorized expenditures for the Wintergreen Resort event could support a claim under one of the anti-fraud laws listed in § 806. Approval authorities exist to ensure that large expenditures are undertaken for appropriate business purposes. Expenditures for which required approvals have not been obtained raise the specter that they are not undertaken for an appropriate business purpose. Once again, such expenditures could plunder corporate assets for the benefit of those attending lavish events, masking personal income. We believe that the Complaint alleges sufficient facts to plausibly support an inference that Wiest had an objectively reasonable belief that the absence of the CEO's authorization for the Wintergreen Resort Event was part of a fraudulent scheme.

31

email show only that Wiest explained to management the potential tax consequences relating to the expenses. Without more, the Complaint lacks sufficient facts to establish that Wiest reasonably believed that Tyco's handling of the matter constituted a violation of a law listed in Section 806.

In addition, Wiest alleges that he "raised questions" about proper accounting treatment of other events that occurred between late 2007 and September 2009, including a "lavish" holiday party, a team meeting that did not break out entertainment and meal expenses, and a baby shower for an employee. Aside from stating that it took several attempts to confirm that the baby shower would be treated as a business expense, Wiest fails to allege any facts suggesting that he reasonably believed these events violated an enumerated provision in Section 806. The Complaint does not specify anything about the nature or content of his communications. By itself, the allegation that Wiest "raised questions" does not create a plausible inference that he or any reasonable person in his position would believe that expenditures on the events rose to the level of a violation of a provision in Section 806. As a result, we affirm the District Court's dismissal Order with respect to Wiest's communications relating to the improper business expense claims of an individual employee as well as the holiday party, team meeting, and baby shower events.

### III.

In sum, we hold that the reasonable belief test is the appropriate standard with which to analyze the communications that Wiest contends constitute "protected activity." As explained in *Sylvester*, that standard requires that an employee's communication reflect a subjective and

32

objectively reasonable belief that his employer's conduct constitutes a violation of an enumerated provision in Section 806. The District Court erred in dismissing Wiest's Complaint by employing the "definitive and specific" standard, by interpreting Section 806 to require that an employee's alleged "protected activity" reveal the elements of securities fraud, and by requiring that his or her communication reference an *existing* violation. We find that Wiest has pled adequate facts to show that his communications relating to the Atlantis and Wintergreen events were protected activity under Section 806. We agree with the District Court, however, that Wiest cannot establish that his communications relating to the other alleged matters constituted protected activity.

For the foregoing reasons, we reverse the District Court's Order denying Wiest's Motion for Reconsideration. *See McDowell v. Phila. Housing Auth.*, 423 F.3d 233, 238 (3d Cir. 2005) (explaining that an errant conclusion of law may result in an abuse of discretion). We also reverse the District Court's Order granting Tyco's Motion to Dismiss as to Wiest's communications relating to the Atlantis and Wintergreen events and affirm the dismissal as to Wiest's communications relating to the other events.[7] We remand this matter to the District Court for further proceedings consistent with this opinion.

---

[7] In light of the reinstatement of the SOX Section 806 claims, the District Court's decision to decline to exercise supplemental jurisdiction will be vacated.

33

*Wiest, et al. v. Lynch, et al.,* No. 11-4257

JORDAN, *Circuit Judge*, Dissenting

Because I believe the District Court properly determined that the Wiests failed to establish that Mr. Wiest held or communicated an objectively reasonable belief that the actions of Tyco officials constituted a violation of one or more of the laws referenced in § 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), Pub. L. No. 107-204, 116 Stat. 745 (codified at 18 U.S.C. § 1514A), I respectfully dissent.

Whistleblower statutes like SOX § 806 seek to protect people who have the courage to stand against institutional pressures and say plainly, "what you are doing here is wrong" – not wrong in some abstract or philosophical way, but wrong in the particular way indentified in the statute at issue. *See Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009) (requiring that an employee's Section 806 complaint "be measured against the basic elements of the laws specified in the statute"). The protection of § 806 depends upon the whistleblower identifying wrongdoing made illegal by federal laws targeting fraud, especially fraud against the holders of publicly traded securities. To qualify as a whistleblower under § 806, the employee must have provided information regarding conduct "which the employee reasonably believes constitutes a violation of [18 U.S.C. §§] 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders … ." 18 U.S.C. § 1514A(a)(1). Section 806 thus defines protected conduct not by reference to the

1

statute in which it is contained,[1] but by reference to four federal fraud statutes, SEC rules and regulations, and other federal law that is circumscribed as "relating to fraud against shareholders."

As the Majority notes, the elements of a § 806 retaliation claim are that (1) the employee "engaged in a protected activity," (2) the employer "knew or suspected that the employee engaged in the protected activity," (3) the employee "suffered an adverse action," and (4) the circumstances were "sufficient to raise the inference that the

---

[1] In contrast to § 806, other whistleblower statutes often identify the targeted wrongdoing within the same statutory scheme. *See, e.g.*, 42 U.S.C. § 7622(a)(1) (defining protected conduct pursuant to the Clean Air Act as having "commenced, caused to be commenced, or [to be] about to commence ... a proceeding" under the Act or testifying or assisting in such a proceeding); 42 U.S.C. § 5851(a)(1) (defining protected conduct pursuant to the Energy Reorganization Act as having notified an employer of a violation of the Act, refusing to engage in practices prohibited by the Act, or commencing or testifying in a proceeding regarding violations of the Act); 30 U.S.C. § 815(c)(1) (defining protected conduct pursuant to the Federal Mine Safety and Health Act as having "filed or made a complaint under or related to" the Act); 29 U.S.C. § 158(a)(4) (defining protected conduct  pursuant to the National Labor Relations Act as having "filed charges or given testimony" under the Act); 31 U.S.C. § 3730(h)(1) (defining protected conduct under the False Claims Act as "lawful acts done by the employee[] ... in furtherance of an action under [the Act] or other efforts to stop 1 or more violations of [the Act]").

protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2); *see also Day*, 555 F.3d at 53 (noting that the "requirements for a prima facie [§ 806] case are articulated in the DOL regulations" (citing 29 C.F.R. § 1980.104)). For purposes of the first, second, and fourth elements, the term "protected activity" means "to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of" one of the laws referenced in § 806. 11 U.S.C. § 1514A(a)(1). To establish a reasonable belief that such a violation has taken place, "an employee must show that he had both a subjective belief and an objectively reasonable belief that the conduct he complained of constituted a violation of relevant law." *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008) (internal quotation marks omitted). Thus, general allegations of misconduct by corporate officers, even if that misconduct relates to financial matters, are not sufficient to state a § 806 claim. *See Day*, 555 F.3d at 56-57 (noting that "violations of 'general accounting principles'" do not constitute "shareholder fraud" that gives rise to SOX-protected activity).

The second element of a SOX retaliation claim confirms that conclusion. It is difficult to see how a defendant, such as a whistleblower's supervisor, can know or suspect that the whistleblower-plaintiff is engaged in protected conduct if the plaintiff's intra-corporate communications do not relate in an understandable way to one of the stated provisions of federal law. What matters is not what is locked inside the plaintiff's mind or how the plaintiff may later describe his actions; it is what is communicated to the employer that counts. *See Welch*, 536 F.3d at 277 ("[T]he relevant inquiry is what an employee

actually communicated to [his] employer prior to the ... termination; it is *not* what [is] alleged in [the employee's] OSHA complaint." (alterations in original) (internal quotation marks omitted)). Both the Department of Labor's Administrative Review Board ("ARB") and the Majority effectively bypass that element of a SOX retaliation claim and concentrate their focus on the complainant's frame of mind and after-the-fact spin. In doing so, they ignore the need for a whistleblower's employer to actually perceive that a whistle has been blown.[2]

The imperative that the whistleblower sound off with clarity was the subject of the ARB's opinion in *Platone v. FLYi, Inc.*, 25 IER Cases 278 (Sept. 29, 2006). That opinion, the reasoning of which was adopted by several courts of appeals,[3] required that "the [complaining] employee's

---

[2] The Majority contends that "whether an employee's communication is indeed 'protected activity' under § 806 is distinct from whether the employer had reason to suspect that the communication was protected." (Majority Op. at 25.) That, however, is contradicted by what the Majority acknowledges is the second element of a § 806 claim, namely that the employer "knew or suspected that the employee engaged in the protected activity." (*Id.* at 15 (internal quotation marks omitted).) The communication of a suspected fraud *is* the protected activity.

[3] *See, e.g.*, *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009) (deferring to the ARB's determination that an "employee's communications must 'definitively and specifically' relate to [one] of the listed categories of fraud or securities violations under [§ 1514A]"); *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009) ("The

4

communications must 'definitively and specifically' relate to any of the listed categories of fraud or securities violations under [§ 806]." 25 IER Cases at 287. In essence, the ARB established something like a pleading standard for intra-corporate communications. But *Platone* has been supplanted by the ARB's recent opinion in *Sylvester v. Parexel International LLC*, 32 IER Cases 497, 505 (U.S. Dep't of Labor May. 25, 2011) (en banc), which jettisons the requirement that SOX whistleblowers definitively and specifically tie with their disclosures to the kinds of fraud listed in § 806.

The ARB evidently viewed that standard as too stringent. When confronted in *Sylvester* with complainants who alleged that their intra-corporate communications concerning compliance with FDA testing protocols were actually allegations of securities fraud,[4] the ARB in effect said "good enough." More precisely, it said:

employee must show that his communications to the employer specifically related to one of the laws listed in § 1514A."); *Welch v. Chao,* 536 F.3d 269, 275 (4th Cir. 2008) ("[A]n employee must show that his communications to his employer definitively and specifically relate[d] to one of the laws listed in § 1514A." (internal alteration and quotation marks omitted)); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 (5th Cir. 2008) ("We agree with the ARB's legal conclusion that an employee's complaint must definitively and specifically relate to one of the six enumerated categories found in § 1514A." (internal quotation marks omitted)).

[4] The rather tenuous connection between the company's conduct and "fraud against shareholders" that the *Sylvester* employees asserted was that, "by covering up

5

> [b]ecause a complainant need not prove a violation of the substantive laws, … *a [SOX] complainant can have an objectively reasonable belief of a violation of the laws in Section 806 … even if the complainant fails to allege, prove, or approximate specific elements of fraud,* which would be required under a fraud claim against the defrauder directly. In other words, a complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.

*Sylvester*, 32 IER Cases at 512 (emphasis added). Ponder that: without "alleg[ing]" or "prov[ing]" or even "approximat[ing]" a charge of fraud, the complaints of a so-called whistleblower are, in the ARB's view, supposed to put a company on notice that a fraud has been identified. The rationale the ARB offered for that conclusion was the *ipse dixit* that "the purposes of the whistleblower protection provision will be thwarted," *id.* at 512, if a § 806 complainant proceeding on a theory of underlying shareholder fraud must actually say something pointing out such fraud.

---

clinical research fraud … Parexel engaged in fraud against its shareholders, financial institutions, and others" because disclosure of the compliance failures would have been "at the expense of the long-term financial performance of the company … [and] would have significantly reduced Parexel's revenue and reputation." *Sylvester v. Parexel Int'l LLC*, 32 IER Cases 497, 501 (U.S. Dep't of Labor May. 25, 2011) (en banc).

6

To discredit the "definitive and specific" requirement, the ARB said that the requirement had been erroneously drawn from a different statute. The whistleblowing provision in the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851, protects an employee who participates in any "proceeding or in any other action to carry out the purposes" of that statute. 42 U.S.C. § 5851(a)(1)(F). The ARB reasoned that the "importation" of a pleading standard derived from the ERA's catch-all provision "is inapposite to the question of what constitutes protected activity under SOX's whistleblower protection provision" because "the SOX whistleblower protection provision contains no similar language, and instead expressly identifies the several laws to which it applies." 32 IER Cases at 509.

My colleagues in the Majority conclude that "the ARB's rejection of *Platone*'s 'definitive and specific' standard is entitled to *Chevron* deference" (Majority Op. at 18) because "the ARB thoroughly explained why it reversed the course it previously set in *Platone*" (*id.* at 20). With all due respect, I cannot agree with that generous characterization of the ARB's work product. *Sylvester's* rejection of *Platone* is hardly explained and far from persuasive.[5] It is strange, for example, to hear the ARB claim

_____

[5] *Chevron* deference extends only to reasonable agency interpretations of ambiguous statutory language. *See Chevron U.S.A., Inc. v. Natural Res. Def. Counsel*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous …, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). For several reasons, including those discussed herein, I question whether the ARB's interpretation of the requirements of a

that the greater specificity of § 806 makes the "definitive and specific" standard inappropriate but then hear it say in the next breath that one need not bother with alleging, proving, or even approximating a statement showing that the specifics of § 806 have been satisfied.

Moreover, the reasoning behind the "definitive and specific" standard applies with at least equal force to § 806 as it does to the pertinent provision of the ERA. I agree with the ARB at least to the extent that it observed that courts have construed the ERA catch-all provision "in light of [that statute's] overarching purpose of protecting acts implicating nuclear safety," and thus courts have required "that an employee's actions implicate safety 'definitively and specifically'" to constitute protected activity. *Sylvester*, 32 IER Cases at 509. In the same way, the overarching purpose of SOX is to expose and therefore deter fraud against shareholders of companies whose shares are publicly traded, *see Cohen v. Viray*, 622 F.3d 188, 195 (2d Cir. 2010) (noting that "[SOX] ... outlaws fraud and deception by managers in the auditing process" (quoting S. Rep. No. 107-205, at 23 (2002) (internal quotation marks omitted)), and, just as the ERA cases call for a definitive and specific linkage to that statute's purpose, so a SOX whistleblower was, once upon a time, required to demonstrate "definitively and specifically" that the subject of his allegedly protected communication implicated the kind of unlawful activity targeted by SOX.[6]

---

§ 806 claim, as expressed in *Sylvester*, represents a reasonable and thus permissible construction of the statute.

[6] As the ARB sees it, the "plain language" of § 806 somehow demands a different result from the one it previously insisted on in *Platone*. *See Sylvester*, 32 IER

8

At the end of the day, though, the fate of the "definitive and specific" standard is not the main issue. That standard is just one way of practically addressing the requirement that a SOX whistleblower demonstrate a reasonable belief that the kinds of unlawful behavior identified in § 806 have occurred or are threatened. Of particular importance here is the "objective reasonableness" component of the reasonable belief requirement. The ARB reaffirmed that component in *Sylvester*, noting that "[t]he second element of the 'reasonable belief' standard, the objective component, 'is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.'" 32 IER Cases at 507 (quoting *Harp v. Charter Commc'ns Inc.*, 558 F.3d 722, 723 (7th Cir. 2009)).[7]

---

Cases at 508 (saying that "the ALJ failed to focus on the plain language of the SOX whistleblower protection provision"). Quoting not the statute, but its legislative history, the ARB says that § 806 protects "'all good faith and reasonable reporting of fraud.'" *See id.* (quoting 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26, 2002)). That broad statement does not support the standardless liability imposed by *Sylvester*, but, more to the point, we are not trying to apply legislative history. Our job is to interpret and apply the statute itself. The plain language of § 806 protects only reporting of conduct that an employee "reasonably believes" constitutes a violation of one of four specific fraud provisions set forth in federal criminal law, or certain SEC rules and regulations, or, at the catch-all level, any other provision of federal law that targets "fraud against shareholders." 18 U.S.C. § 1514A(a)(1).

[7] Moreover, prior to *Sylvester*, our sister circuits treated

9

Unfortunately, *Sylvester* provides no guidance as to what, if anything, a § 806 claimant is required to allege. In its efforts to lower the bar, the ARB has provided little more than a recitation of what is *not* required for an employee to allege protected conduct. *See* 32 IER Cases at 512 ("[A] complainant need not prove a violation of the substantive laws …"); *id.* ("[A] complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation."); *id.* ([A] complainant ... [need not] allege, prove,

---

the "definitive and specific" requirement as separate from the statutory requirement of reasonable belief. *See, e.g.*, *Welch*, 536 F.3d at 275 ("To … establish that he engaged in protected activity, an employee must show that he had both 'a subjective belief and an objectively reasonable belief' that the conduct he complained of constituted a violation of relevant law. Additionally, an employee must show that his communications to his employer 'definitively and specifically relate[d]' to one of the laws listed in § 1514A."); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000 (9th Cir. 2009) (noting, after determining that the plaintiffs satisfied the "definitively and specifically" standard from *Platone*, that they must also have a reasonable belief concerning a violation of a listed law in order "to trigger the protections of the Act"); *Day*, 555 F.3d at 54 (treating the "definitively and specifically" requirement and "reasonable belief" requirement separately); *Allen*, 514 F.3d at 477 (same). Consequently, although the ARB eliminated the "definitive and specific" standard as "an inappropriate test ... [that] is often applied too strictly," 32 IER Cases at 509, the determination of the objective reasonableness of a SOX complainant's belief remains a necessity.

or approximate that the reported irregularity or misstatement satisfies securities law 'materiality' standards, was done intentionally, was relied upon by shareholders, and that shareholders suffered a loss because of the irregularity.").[8]

Trying to apply the impossibly vague "standard" of *Sylvester*, the Majority has adopted an internally inconsistent test. On one hand, my colleagues rightly reject the argument offered by our amicus, the National Whistleblower Center, that no more than an employee's own subjective good faith belief is required to allege a § 806 violation. (*See* Majority Op. at 21 ("As explained in *Sylvester*, the reasonable belief standard also includes an objective element.").) On the other hand, they go on to conclude that the ARB "expressly rejected" the District Court's interpretation of § 806 as requiring that Wiest demonstrate "'an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors which were material and which risked loss.'" (Majority Op. at 23 (quoting *Wiest v. Lynch*, No. 10-3288, 2011 WL 2923860, at *4 (E.D. Pa. July 21, 2011)).) Those two conclusions seem to me to be in tension, and one is left to wonder what the objective standard is for measuring whether a complainant's belief is reasonable if it is not the existing rules of law expressly noted in § 806.[9]

---

[8] The Majority follows the ARB's approach, concluding that a "whistleblower's communication need not ring the bell on each element of one of the stated provisions of federal law in [§ 806]" (Majority Op. at 25), without specifying which, if any, bells must be rung.

[9] The Majority perceives no inconsistency because it "do[es] not think Congress intended such a formalistic approach to the question of whether an employee has engaged

11

Pre-*Sylvester* case law from federal courts made it clear that "[t]he reasonableness of [a SOX complainant's] belief for purposes of § [806] must be measured against the basic elements of the laws specified in the statute." *Day*, 555 F.3d at 55. Logically, that ought still to be the case. Section 806 references identifiable pieces of positive law. They are not mere generalities and they do not open the door to whistleblower relief to anyone with vague feelings of unease or even specific discomfort with something other than that which is identified in § 806. Particularly pertinent here, "'[f]raud' itself has defined legal meanings and is not, in the context of SOX, a colloquial term." *Id.*[10] Section 806 thus

in 'protected activity.'" (Majority Op. at 22.) I do not agree that requiring that an allegedly protected communication clearly relate to one of the laws enumerated in § 806 is an exercise in formalism. But even if it were, Congress has expressed its intent in the text of the statute, which sets forth the particular laws that may give rise to a SOX whistleblower claim.

[10] The Majority correctly points out that an employee's reasonable belief may not always be determined as a matter of law or on the basis of averments in a complaint. However, a SOX whistleblower's claim must be based on allegations of mail, wire, and securities fraud, which are required to be pled with specificity pursuant to Federal Rule of Civil Procedure 9(b) or are subject to the heightened pleading standards of the Private Securities Litigation Reform Act (PSLRA), Pub. L. No. 104-67, 109 Stat. 737 (1995). Rule 9(b) "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997), while

12

requires a SOX whistleblower to demonstrate that he has done more than criticize undesirable corporate conduct. He is required to demonstrate that his protected communication concerned a "violation" of one of the listed statutes or of an SEC rule or regulation or other Federal law relating to fraud on shareholders. A violation can only be said to "relat[e] to ... fraud against shareholders" if it manifests at least some of the elements of fraud as defined in the securities context, such as falsity, scienter, and materiality. *Cf. In re Cabletron Sys., Inc.*, 311 F.3d 11, 34 (1st Cir. 2002) ("Merely stating in conclusory fashion that a company's books are out of compliance with GAAP would not in itself demonstrate

---

the PSLRA is intended to "curb frivolous lawyer-driven litigation, while preserving the [plaintiffs'] ability to recover on meritorious claims," *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007). Notwithstanding the ARB's conclusion that those sorts of heightened pleading requirements "should not be applied to SOX whistleblower claims," *Sylvester*, 32 IER Cases at 505, the same concerns that gave rise to those requirements suggest that communications that serve as the basis of a claim under § 806 should contain something more than vague allegations concerning a possible fraud. I am not suggesting the importation of pleading standards to the review of a whistleblower's allegedly protected communications. I am suggesting that it is not too much to ask for some specificity, especially since SOX whistleblower protection has the effect of shielding an employee from any disciplinary action and should not be lightly granted.

13

liability under section 10(b) or Rule 10b–5."); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter" in a securities fraud action (internal quotation marks omitted)); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." (internal quotation marks omitted)). The many cases to that effect cannot with propriety be swept away by the federal bureaucracy deciding it would like SOX to reach beyond the frauds specified in the statute.[11]

---

[11] We are not required to follow – and arguably are constitutionally compelled to reject – an agency's reversal of course that contradicts prior judicial interpretations of a statute. "Article III courts do not sit to render decisions that can be reversed or ignored by executive officers." *Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 1017 (2005) (Scalia, J., dissenting) (citing *Chicago & S. Air Lines Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948)). "Once [a court] ha[s] determined a statute's meaning, [it] adhere[s] to [its] ruling under the doctrine of *stare decisis*, and [it] assess[es] an agency's later interpretation of the statute against that settled law." *Neal v. United States,* 516 U.S. 284, 295 (1996). In this case, numerous courts of appeals, *see supra* note 3, have construed SOX § 806 as requiring that a complainant's communications include the elements of one or more of the referenced laws. Under the Majority's approach, the ARB will be "able to

14

In this case, the application of a test of objective reasonableness that looks to the elements of securities fraud shows Wiest's allegedly protected communications for what they are: a bookkeeper's sensible inquiries about proper accounting for expenses, not allegations of fraud. Wiest's statements about the Atlantis Resort Event prove the point. The Majority concludes that "[a] reasonable person in Wiest's position who had seen the expense request for the extravagant Atlantis event could have believed that treating the Atlantis event as a business expense may have violated a provision of Section 806 … ." (Majority Op. at 28.) A fair question is "which one?" Wiest does not claim that he reasonably believed that "extravagance" or the possible reporting of employee expenses as advertising expenses constituted mail fraud, wire fraud, or bank fraud. He alleges rather that, "if Tyco had processed the transaction as originally submitted, it 'would have resulted in a misstatement of accounting records and a fraudulent tax deduction.'" (Majority Op. at 27 (quoting App. at 43).) That would seem to point to a violation of 18 U.S.C. § 1348, which involves fraud in connection with a sale of securities, or of a "rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). However, Wiest's communication with Tyco about the Atlantis Event contains none of the elements of a securities fraud. In particular, it contains no

---

disregard that construction and seek *Chevron* deference for its contrary construction the next time around." *Nat'l Cable & Telecommc'ns Ass'n*, 545 U.S. at 1017 (Scalia, J., dissenting). *Stare decisis* is not a straitjacket, but it must mean something more than "this is the law until the executive branch unilaterally changes its mind."

15

hint of falsity but rather suggests that an accounting judgment was faulty and needed to be corrected, which it was.[12]

----

[12] My colleagues in the Majority appear to have been persuaded by an allegation in Wiest's complaint that, but for his intervention, the Atlantis Event would have resulted in "a misstatement of accounting records and a fraudulent tax deduction." (Majority Op. at 5 (quoting App. at 43-44) (internal quotation marks omitted).) Following the Majority's instruction that the determination of reasonable belief "should be based upon all of the attendant circumstances, and not be limited to the facts conveyed by a whistleblower to the employer" (*id.* at 26), Wiest's Atlantis Event allegation is belied by the record and is inconsistent with applicable tax law. Wiest's email regarding the Atlantis Event simply requested that "the relevant tax department resources" review the proposed costs to determine if some would not have been fully deductible as business expenses but rather would have to be treated as employee compensation and reported as income to employees attending. (*See* App. at 102 (suggesting that the "meal and entertainment portions" might "fall into the 50% deductibility classification for tax purposes" and that expenses associated with spouses and friends attending the event should be "recorded as income to the employees attending").) As Wiest himself admits in his complaint, the result of that review was that Tyco determined that "[t]he trip did not qualify as a business expense per IRS guidelines and[] ... would have to be treated as an award and as income to the attendees and reported on their W-2s." (App. at 45.) Compensation to employees is treated as a business expense for federal tax purposes, *see* I.R.C. § 162(a)(1), so the cost would have been deductible for Tyco under either scenario. The classification of the cost of the Atlantis Event, while

The supposed connection between Wiest's communications regarding the Wintergreen Resort Event and a violation of a statute or regulation referenced in § 806 is even more strained. The Majority concludes that "a reasonable person in Wiest's position could have believed that the event's approval by an attendee of the event[] … instead of by the CEO as required by internal control procedures, may have violated one of the provisions contained in Section 806." (Majority Op. at 31.) Assuming the unspecified violation is again securities fraud, there is still the glaring question of how his communication with the company indicated any fraud. Unlike his allegations concerning the Atlantis Resort Event, Wiest does not claim that expenses from that event were not recorded correctly, nor does he allege that any public financial disclosure was at issue. As a result, it is impossible to identify a securities fraud. The Majority simply suggests that it was reasonable for Wiest to believe that there had been such a violation because "the event's approval [was] by an attendee of the event, who would therefore directly benefit from that approval … ." (*Id.*) Leaving aside the fact that there is no explanation of what the "direct benefit" was, that allegation goes only to motivation and does nothing to establish a violation of any of the laws referenced in § 806.

Given the present record, two final observations should be made about the Majority's application of the

significant to employees for whom it represented taxable compensation, was irrelevant for purposes of Tyco's public financial statements, and, even if the error had gone uncorrected, it is a huge stretch to say that such a mistake would constitute shareholder fraud.

objective reasonableness standard. First, even *Sylvester* acknowledged that objective reasonableness "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." 32 IER Cases at 507 (quoting *Harp*, 558 F.3d at 723) (internal quotation marks omitted). When an employee is a licensed CPA, and thus able to distinguish between violations of accounting rules and violations of SEC rules or regulations, a failure to do so tends to show his asserted belief that a violation of the latter has occurred to be less than objectively reasonable. *Cf. Allen*, 514 F.3d at 477 (finding that, although a violation of an SEC accounting bulletin could fall within the general "fraud against shareholder" category of § 1514A, the complainant CPA's belief as to the violation was not objectively reasonable). Wiest is a trained accountant who had more than thirty years experience in Tyco's accounting department, which, as the Majority points out, had been under "a high level of audit scrutiny" for the last decade. (Majority Op. at 4. (quoting App. at 42) (internal quotation marks omitted).) The Majority itself observes that Wiest had knowledge of both "accounting standards ... and securities and tax laws." (*Id.*) Therefore, Wiest should be held to a "higher [objective reasonableness] standard" than someone of "limited education." *Sylvester*, 32 IER Cases at 507 (citing *Parexel Int'l Corp. v. Feliciano*, 28 IER Cases 820, 2008 WL 5101642, at *3 & n.6 (E.D. Pa. 2008)). Since his allegedly protected communications do not meet even an objective standard geared to the general public, they certainly do not meet a heightened standard applicable to someone of his training and experience.

18

Second, as the ARB acknowledged in *Sylvester*, "many of the laws listed in § [806] of SOX contain materiality requirements," and "[i]t may well be that a complainant's complaint concerns such a trivial matter that he or she did not engage in protected activity under Section 806." 32 IER Cases at 512. For that grudging acknowledgement of a materiality requirement to be consistent with existing law concerning fraud against shareholders, a SOX complainant must believe that there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (internal quotation marks omitted)); *see also TSC Indus.*, 426 U.S. at 448 (acknowledging that certain information concerning corporate developments is of "dubious significance"). Wiest's allegedly protected communications concerned transactions with no financial impact on Tyco, *see supra* note 12, or internal control practices that are not financial in nature and are not reported to shareholders. The subjects of Wiest's communications were not material, and contrary to the Majority's conclusion, those communications do not demonstrate an objectively reasonable belief that a shareholder fraud was being threatened.

The essence of Wiest's assertion that the conduct he found objectionable "relates to" fraud against shareholders for purposes of § 806 is, as his attorney put it to the District Court, that "every time you improperly allocate money to something that is improper, you are affecting the value of the company, and the value of the company is determined by individuals who buy and sell stock." (App. at 290-91.) That

19

sweeping statement, which even the attorney attempted to walk back at oral argument before us, underscores the flaw in the Majority's approach to post-*Sylvester* objective reasonableness. If it is unnecessary to measure a SOX complainant's reasonable belief against at least some of the elements of securities fraud, like materiality, then virtually any internal questioning of an accounting mistake or a judgment call turns the questioner into a SOX whistleblower, and that cannot be right.

As the District Court correctly noted, Wiest "failed … to plead facts reflecting [his] reasonable belief that his communications regarding the tax treatment of certain company expenses related – in any way, definitively and specifically, or otherwise – to shareholder fraud or a violation of one of the statutes or rules listed in § [806]." *Wiest v. Lynch*, No. 10-3288, 2011 WL 5572608, at *4 (E.D. Pa. Nov. 16, 2011). The District Court recognized that the protection afforded SOX whistleblowers is limited to communications that relate to violations of the law specified in § 806, and it assessed the reasonableness of Wiest's alleged belief consistent with the explicit scope of § 806. The thoughtful opinion of the District Court is entirely sound in that regard, and I would therefore affirm the judgment against the Appellants.